**NORMAN GERSHMAN'S THINGS TO WEAR, INC., a corporation of the State of Delaware, Plaintiff,**

v.

**MERCEDES–BENZ OF NORTH AMERICA, INC., a corporation of the State of Delaware, and I.G. Burton & Company, Inc., a corporation of the State of Delaware, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: Nov. 11, 1988.
Decided: Feb. 10, 1989.

On Motion of Defendants for Summary Judgment GRANTED in Part—DENIED in Part.

Christopher J. Curtin, of Sawyer & Akin, P.A., Wilmington, for plaintiff.

L. Coleman Dorsey, and Joseph M. Bernstein, Wilmington, for defendant Mercedes–Benz of North America, Inc.

N. Maxon Terry, Jr. of Jackson, Terry & Wright, Dover, for defendant I.G. Burton & Co., Inc.

TAYLOR, Judge.

This suit involves the sale of an allegedly defective automobile to plaintiff Norman Gershman's Things to Wear, Inc. [Gershman's]. The car was distributed by defendant Mercedes–Benz of North America, Inc. [Mercedes] and sold to Gershman's by defendant I.G. Burton & Co., Inc. [Burton]. In its complaint Gershman's has alleged against both defendants breach of numerous warranties; failure of the essential purpose of the warranties; violation of Delaware's "Lemon Law"; violation of Delaware's Consumer Fraud and Deceptive Trade Practices Acts; negligent repair; and violation of the Magnuson–Moss Federal Consumer Products Warranties Act. Defendants have each moved for summary judgment on various of the above issues. In addition, Burton has also moved for summary judgment against Mercedes seeking indemnification for any damages which might be awarded to plaintiff against Burton and also for attorney's fees incurred in defending this action.

Gershman's purchased from Burton, a dealer in Mercedes–Benz automobiles, a new 1984 Mercedes–Benz 500 SEC which was distributed by Mercedes. Approximately six months after the purchase, the car's engine overheated and had to be repaired. The car was taken to Burton for repairs. Upon inspection it was determined that the overheating was caused by a hairline crack in the short block portion of the engine. This information was conveyed to Mercedes. Pursuant to instructions from Mercedes, Burton replaced the short block without expense to Gershman's.

Less than two years later the car again overheated causing extensive damage to the engine. The car was again taken to Burton for repairs. Mercedes was informed of the problem and authorized the replacement of the entire engine assembly as a covered warranty repair. Following this repair, Gershman's refused to accept redelivery of the vehicle and notified Mercedes and Burton that it was revoking its acceptance of the vehicle and demanding a full refund of the purchase price. The defendants refused to refund Gershman's the purchase price and this suit was instigated. In 1987 the car was sold at auction by agreement of the parties.

I

Count I of the complaint alleges breach of express warranties by both Burton and Mercedes. Count II of the complaint alleges breach of implied warranty of merchantability. Burton has moved for summary judgment on these issues, arguing that it had effectively disclaimed any express or implied warranties in its "Sales Contract" with Gershman's. These are governed by Article 2 of the Uniform Commercial Code, 6 *Del.C.* Subtitle I. "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" is an express warranty of the contract. 6 *Del.C.* § 2–313. In addition, there is an implied warranty in the contract that the goods are merchantable, unless this warranty is excluded or modified. 6 *Del.C.* § 2–314. Goods are "merchantable" if they are "fit for the ordinary purposes for which such goods are used." 6 *Del.C.* § 2–314(2)(c). In order to exclude or modify the implied warranty of merchantability, the language of the exclusion or modification must mention merchantability and in the case of a writing must be conspicuous. 6 *Del.C.* § 2–316(2). "Conspicuous" is defined at 6 *Del.C.* § 1–201(10) as follows:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color.... Whether a term or clause is "conspicuous" or not is for decision by the court.

The touchstone of conspicuousness is "whether a person's attention can reasonably be expected to be called to the disclaimer language." *Lecates v. Hertrich Pontiac Buick Co.,* Del.Super., 515 A.2d 163, 169 (1986).

The sales contract by which Burton sold the car to Gershman's was a one-page document with writing on both the front and back. The following paragraph appears on the reverse side of the page:

The only warranties applying to this vehicle are those offered by the Manufacturer. Dealer hereby expressly disclaims all warranties, either expressed or implied, including any implied warranties of merchantability or fitness for a particular purpose, and Dealer neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this vehicle. Purchaser shall not be entitled to recover from Dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits, or income, or any other incidental damages....

This paragraph is one of eight paragraphs on the back page of type which is significantly smaller than type appearing elsewhere in the document. In bold type that is slightly larger than some of the other type on the front of the document is written "DISCLAIMER OF WARRANTIES—SEE REVERSE SIDE". This is the only reference to a disclaimer of warranties which appears on the front of the document. On the back of the document is a section with the bold heading "ADDITIONAL TERMS AND CONDITIONS".

The Court concludes that this warranty disclaimer does not meet the statutory requirement that the disclaimer must be conspicious. The attempt on the front of the contract was to alert the purchaser that a disclaimer of warranty of merchantability

was inserted on the back of the contract. It did not identify which of the eight paragraphs on the back page contained the disclaimer. The disclaimer paragraph is in no way set off "in larger or contrasting type or color" from the other paragraphs on the back of the contract. This Court cannot say as a matter of law that "a reasonable person ought to have noticed it". As such, Burton's attempted disclaimer of both express and implied warranties is ineffective, and, therefore, Burton is not entitled to summary judgment with respect to Counts I and II of the complaint.

## II

Mercedes has moved for summary judgment on Counts I and II on the ground that its exclusive express written warranty limited its obligation to repair or replacement of defective parts. It contends that its exclusive express written warranty complies with 6 *Del.C.* § 2–719 and that it had fulfilled its obligation under this warranty by satisfactorily repairing the car. 6 *Del. C.* § 2–719 provides:

(1) Subject to the provisions of subsections (2) and (3) of this section ...,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Mercedes' express written warranty provides that "any authorized Mercedes–Benz dealer of the owner's choice" will make any repairs or replacements necessary to correct defects in material or workmanship for a period of 48 months or 50,000 miles at no expense to the owner. In addition, the warranty provides:

EXCEPT FOR THE EMISSION SYSTEMS WARRANTY, THIS IS THE ONLY WARRANTY GIVEN WITH THE PURCHASE OF A MERCEDES–BENZ PASSENGER CAR.... NO PAYMENT OR OTHER COMPENSATION WILL BE MADE FOR INDIRECT OR CONSEQUENTIAL DAMAGE SUCH AS DAMAGE OR INJURY TO PERSON OR PROPERTY OR LOSS OF REVENUE WHICH MIGHT BE PAID, INCURRED OR SUSTAINED BY REASON OF THE FAILURE OF ANY PART OR ASSEMBLY WHICH MAY BE REPAIRED OR REPLACED IN ACCORD WITH THE TERMS OF THIS WARRANTY.

\* \* \* \* \* \*

EXCEPT FOR THE EMISSION CONTROL WARRANTY, THIS WARRANTY AND THE LIMITED WARRANTY FOR NEW MERCEDES–BENZ VEHICLES ARE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATION. EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ALL OTHER OBLIGATIONS OR LIABILITIES ON THE PART OF THE WARRANTOR....

██ Under 6 *Del.C.* § 2–719(2), where circumstances cause an exclusive or limited remedy to fail of its essential purpose, the purchaser may resort to the remedies provided by the Uniform Commercial Code. An exclusive remedy of repair or replacement of defective parts will be held to have failed of its essential purpose where the warrantor refuses to repair the vehicle, the vehicle is not repaired within a reasonable

time or the vehicle is not repaired in a reasonable number of attempts. *See generally* Annot., 2 A.L.R.4th 756 (1980); *Cf. Beal v. General Motors Corp.*, D.Del., 354 F.Supp. 423 (1973).

■ In the present case Gershman's argues that the warranty failed of its essential purpose because Mercedes failed to correct the defect in conformity to the warranty within a reasonable time and a reasonable number of attempts. It is Gershman's position that following the first engine overheating, the car was out of operation for four to five weeks while being repaired. Mr. Gershman testified that following the repair, the car never functioned properly and it continued to experience overheating problems and on occasions would stall or hesitate. Mr. Gershman also stated that when the car would get caught in traffic "the thermostat needle would have a habit of going up, not to the red point, but to the point right before the red point and that eventually, it would come back down." Approximately three months after the engine was repaired, Mr. Gershman returned the car to Burton's for service. The service order contains a notation to "check engine for overheating."

Mercedes contends that following the first engine overheating it complied with its warranty by replacing the damaged portions of the engine and repairing the defect in twenty-one days. Mercedes also contends that Gershman's claim that the engine continued to overheat is refuted by the fact that on six separate occasions following the first engine overheating, Gershman's brought the car to Burton for service, but did not mention any problem with overheating. The above conflict in evidence establishes a dispute of material fact regarding the performance of the car following the first engine overheating and the amount of time the car was out of service for repairs, and, hence, as to whether Mercedes' warranty failed of its essential purpose. This bars summary judgment with

respect to Mercedes. The Court need not address Gershman's other arguments.

### III

Count III of the complaint alleges that both Burton and Mercedes violated 6 *Del.C.* § 5002 *et seq.*, better known as Delaware's "Lemon Law"[1]. Section 5002 provides:

> If a new automobile does not conform to the manufacturer's express warranty, and the consumer reports the nonconformity to the manufacturer or its agent or dealer during the term of the warranty or during the period of 1 year following the date of original delivery of an automobile to the consumer, whichever is earlier, *the manufacturer shall make, or arrange with its dealer or agent to make,* within a reasonable period of time, all repairs necessary to conform the new automobile to the warranty, notwithstanding that the repairs or corrections are made after the expiration of the term of the warranty or the 1–year period. [Emphasis added.]

Under 6 *Del.C.* § 5003(a), a manufacturer is required to accept return of a vehicle from the consumer and provide the consumer with a new car or refund the purchase price if the manufacturer is unable to conform the new automobile to the warranty by repairing or correcting any nonconformity after a reasonable number of attempts.

■ Burton has moved for summary judgment on Count III, arguing that 6 *Del. C.* § 5002 is not applicable to a car dealer, but instead places the onus upon the manufacturer to make the repairs called for by the statute. Gershman's reading of the statute requires both the dealer and manufacturer to assume responsibility for the repairs. Neither side, however, has cited any authority supporting its position. Under 1 *Del.C.* § 303, this Court is required to read words and phrases in the *Delaware Code* with their context and construe such words and phrases according to the common and approved usage of the English

---

1. For purposes of Delaware's Lemon Law, "manufacturer" includes "a person engaged in the business of ... distributing automobiles, who will, under normal business conditions during the year, ... distribute to dealers at least 10 new automobiles." 6 *Del.C.* § 5001(3).

language. As such, this Court is satisfied that this statute places responsibility upon the manufacturer alone to make the repairs required by the statute. Given that Burton is not the manufacturer of the vehicle, Gershman's claim against Burton for violation of Delaware's Lemon Law is not well-founded and, therefore, Burton is entitled to summary judgment as to Count III.

■ Mercedes has also moved for summary judgment as to Count III arguing that the remedial section of Delaware's Lemon Law is not applicable because it complied with its obligations under the warranty by promptly repairing any defects in the vehicle. In addition, Mercedes argues that Gershman's remedy is limited to its exclusive repair or replacement warranty and, therefore, Gershman cannot seek remedy under Delaware's Lemon Law. This decision has found that a factual issue exists with respect to whether the vehicle had in fact conformed to the warranty after it had been repaired and whether Mercedes' exclusive warranty failed of its essential purpose. Mercedes is not entitled to summary judgment on Count III of the complaint.

### IV

Count IV of the complaint alleges a violation of the Magnuson–Moss Consumer Products Warranties Act, 15 U.S.C. § 2301 *et seq.*, against both Burton and Mercedes. Gershman's contends that Burton violated that Act by attempting to waive its implied warranty of merchantability.

Burton has moved for summary judgment on this issue on the ground that that Act is inapplicable to it because it did not give Gershman's a written warranty.

The Act is designed to eliminate the widespread abuse of deceptive warranty practices. The Act provides a consumer with a private cause of action against a supplier or warrantor who violates the Act, or fails to honor a written or implied warranty. 15 U.S.C. § 2310(d)(1). "Supplier" is defined under the Act as "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. § 2301(4).

"Warrantor" includes "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5). Under § 2308, a supplier is prohibited from disclaiming or modifying implied warranties where it has entered into a written warranty or service contract with the consumer. That section provides:

**Restrictions on disclaimers or modifications**

(a) No supplier may disclaim or modify … any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

**Limitation on duration**

(b) For purposes of this chapter … implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty.

**Effectiveness of disclaimers, modifications or limitations**

(c) A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and state law.

15 U.S.C. § 2308. The Act defines written warranty to include:

[A]ny undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking.

15 U.S.C. § 2301(6)(B). "Service contract" is defined as "a contract in writing to perform, over a fixed period of time for a specified duration, services relating to the

maintenance or repair (or both) of a consumer product." 15 U.S.C. § 2301(8).

Gershman's argues that Burton improperly attempted to waive its implied warranty of merchantability in violation of § 2308 and failed to comply with its implied warranty in violation of § 2310(d). Burton contends that § 2308 is inapplicable to Burton because Burton did not give Gershman's a written warranty or enter into a service contract which applied to the car, as required by the Act.

The only writing originating with Burton in connection with the sale of this car was the sales contract discussed in Part I of this Opinion, in which Burton attempted to disclaim all warranties. At the time of the sale Burton also delivered to Gershman's the Mercedes Owner's Manual which contained the following warranty:

> DEFECTS: Mercedes–Benz of North America, Inc. (MBNA) warrants to the original and each subsequent owner of a new Mercedes–Benz passenger car that any authorized Mercedes–Benz Dealer will make any repairs or replacements necessary, to correct defects in material or workmanship.
>
> \* \* \* \* \* \*
>
> ANY MERCEDES–BENZ DEALER: Any authorized Mercedes–Benz dealer of the owner's choice will perform warranty repairs or replacements....

However, this is a warranty by Mercedes and does not purport to be a Burton warranty.

Gershman's has not presented authority to indicate that Burton's attempted warranty disclaimer constitutes a "written warranty" under the Act. Instead, Gershman's argues that Burton's delivery of Mercedes' written warranty to the consumer is sufficient to bring the dealer within the purview of the Act.

Burton cites *Henderson v. Benson–Hartman Motors, Inc.*, Pa.C., 41 U.C.C. Rep. 782 (1983), in support of its position. In *Henderson*, the dealer-lessor of an automobile delivered to the lessee the automobile manufacturer's warranty which provided that that dealer-lessor would perform all warranty repairs. The Court held that the dealer-lessor, by delivering that warranty which bound itself to make the warranty repairs, had adopted the written warranty as its own and, therefore, it was bound by the Act.

The Mercedes written warranty in the present case which was delivered by Burton differs from that in *Henderson* because here the commitment is not specific to Burton but instead applies to "any authorized Mercedes–Benz dealer" to make the necessary warranty repairs and is not limited to the "Selling Dealer" as was the warranty in *Henderson*. I find that Burton's delivery of the Mercedes written warranty does not constitute an undertaking on the part of Burton to repair the product. Accordingly, Burton is entitled to summary judgment on Count IV of the complaint.

Gershman's alleges that Mercedes violated the Act by breaching its express warranty and the implied warranty of merchantability in violation of 15 U.S.C. § 2310 and by improperly attempting to waive the implied warranty of merchantability under 15 U.S.C. § 2308. Mercedes has moved for summary judgment arguing that Gershman's remedy is limited by the warranty to repair or replacement of the defective part and that it has complied with its written warranty by promptly correcting all defects. As previously stated, whether Mercedes did, in fact, comply with its written warranty cannot be determined at summary judgment given the conflicting evidence concerning performance of the car after it was repaired for the first engine overheating.

As for the allegation that Mercedes improperly disclaimed its implied warranty of merchantability, Mercedes argues that the implied warranty was properly limited in duration as permitted under 15 U.S.C. § 2308(b). As previously mentioned, limitations on the duration of an implied warranty is permitted under § 2308(b), provided that the limitation is prominently displayed on the face of the warranty in clear and unmistakable language and such limitation must be conscionable. Under the terms of Mercedes' written warranty, Mer-

cedes is obligated to make any repairs or replacements necessary to correct defects for a period of 48 months or 50,000 miles. The warranty also provides in capital type on its face that "any warranties implied by law are limited to 48 months or 50,000 miles...." In these circumstances, the Court holds that Mercedes' implied warranty limitation complies with the requirements of 15 U.S.C. § 2308(b). Thus, Mercedes is entitled to summary judgment as to Count IV of the complaint alleging a violation of the Magnuson–Moss Consumer Products Warranties Act based upon Mercedes' alleged improper limitation of implied warranty.

## V

Count V of the complaint alleges consumer fraud as defined in 6 *Del.C.* § 2513 against both Burton and Mercedes. Gershman's alleges that both defendants falsely represented that the car was free from defects and that any defects in the car would be promptly corrected. In addition, Gershman's alleges that Burton made fraudulent post-sale representations which Gershman's relied upon in not exercising its rights under the law.

Section 2513(a) of the Delaware Consumer Fraud Act provides:

(a) The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, *in connection with the sale or advertisement* of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice. [Emphasis added.]

The purpose of the Act is to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices", and to that end the Act is to be liberally construed. 6 *Del.C.* § 2512. *See In Re: Brandywine Volkswagen Ltd.*, Del. Super., 306 A.2d 24 (1973). In order to prove fraud, the consumer must establish that the merchant who made a false state-

ment knew that the statement was untrue or negligently made the misrepresentation. *Stephenson v. Capano Development, Inc.*, Del.Supr., 462 A.2d 1069, 1072 (1983). "A person will be chargeable with a false statement if it was made under such circumstances as to raise a presumption of his knowledge of the falseness." *In Re: Brandywine Volkswagen, Ltd.*, 306 A.2d at 27.

█ Burton has moved for summary judgment on this issue. First, Burton argues that the statute by its own wording does not apply to post-sale representations. Gershman's argues that the inclusion of post-sale representations under the statute would be consistent with the liberal construction of the Act called for by the legislature. Although Gershman's correctly notes that the provisions of the Consumer Fraud Act are to be liberally construed, this Court cannot ignore the clear language of the statute which restricts its application to deceptive practices "in connection with the sale or advertisement" of the merchandise. Given this statutory limitation, it is clear that post-sale representations which are not connected to the sale or advertisement of the vehicle do not constitute consumer fraud under the Act. Therefore, Burton is entitled to summary judgment as to Count V of the complaint based upon any alleged post-sale representations.

█ Turning to Gershman's claim of alleged fraudulent presale representations by Burton that the car was free from defects, the record contains a sworn affidavit from David G. Burton, the president of Burton, that the car sold to Gershman's was inspected by the trained mechanics at Burton and that no defect was discovered. Mr. Burton also stated that Burton had no knowledge of any defects in the car at the time of the sale. Archie L. Carey, Jr., a Burton mechanic, testified by affidavit that "it would have been virtually impossible to have discovered the hairline crack in the short block engine during a reasonable routine inspection prior to the sale of the automobile." Gershman's will bear the burden of proving alleged fraudulent presale representations at trial. In these circumstanc-

es, it is incumbent upon Gershman's "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986). Gershman's has pointed the Court to no evidence which would show that Burton had knowledge of the defect or negligently misrepresented the condition of the car. Accordingly, Burton is entitled to summary judgment as to Count V dealing with alleged fraudulent presale representations.

■ Gershman's also alleges that Burton violated the Consumer Fraud Act by falsely representing that any defects in the car would be promptly repaired due to the availability of parts for the car from Burton. Gershman's claims that the parts necessary for repair of the vehicle were in fact not available and this resulted in unreasonable repair delays. Burton has failed to respond to this allegation in its briefs in support of this motion. Therefore, summary judgment is not appropriate on that part of Count V of the complaint which asserts fraudulent presale representations by Burton about the availability of parts to fix the car.

Mercedes has moved for summary judgment on Count V arguing that its "repair or replacement" warranty was exclusive, and any evidence of alleged false representations contradicting the terms of this exclusive warranty made prior to or contemporaneous with the sale of the vehicle is barred by the parole evidence rule under 6 *Del.C.* § 2–202. As previously noted, a factual issue exists as to whether the exclusive warranty failed of its essential purpose. Since Mercedes' argument as to Count V centers on its exclusive warranty, summary judgment is not appropriate.

## VI

Count VI of the complaint alleges that Burton and Mercedes violated Delaware's Deceptive Trade Practices Act, 6 *Del.C.* § 2531, *et seq.* Both defendants contend

that a consumer is not entitled to a remedy based on violation of that Act.

■ The Deceptive Trade Practices Act provides a remedy for persons likely to be damaged by deceptive practices including injunctive relief and attorney's fees where the deceptive trade practice is willful. 6 *Del.C.* § 2533. If damages are awarded to an aggrieved party under the common law or other statute of Delaware, the Deceptive Trade Practices Act provides for such damages to be trebeled. 6 *Del.C.* § 2533(c). Burton and Mercedes have both moved for summary judgment on this issue arguing that, as a consumer, Gershman's lacks standing to bring an action for violation of the Act.

In *Roberts v. American Warranty Corp.,* Del.Super., 514 A.2d 1132 (1986), this Court held that a consumer does have standing to bring an action for violation of the Delaware Deceptive Trade Practices Act. In *Roberts* a car buyer brought an action for violation of the Act against a car dealer based upon the difference between a used car warranty as represented and as actually provided. In holding that a consumer did have standing under the Act, this Court noted that antifraud provisions are generally designed to protect anyone who would otherwise be injured by the prohibited conduct and concluded: "It cannot be accepted that the legislature intended to prevent various deceptions of the public but intended not to permit a remedy to be exercised by the deceived members of the public." *Id.* at 1113. Defendants' arguments have not presented a persuasive ground for departing from the reasoning in *Roberts.* Accordingly, defendants are not entitled to summary judgment on Count VI of the complaint.

■ Mercedes raises the additional argument that Gershman's is not entitled to relief under that Act because the allegations of deceptive trade practices are simply a repetition of its breach of warranty claims and, as such, do not support a violation of the Deceptive Trade Practices Act. *See Whitehurst v. Crisp R.V. Center, Inc.,* 86 N.C.App. 521, 358 S.E.2d 542 (1987). Under 6 *Del.C.* § 2533(c), however, the re-

lief provided for by the Act is "in addition to remedies otherwise available against the same conduct under the common law or other statutes." Therefore, if the same conduct establishes both a breach of warranty and a deceptive trade practice, the injured party is not prevented from bringing an action for breach of warranty and seeking injunctive relief or treble damages under the Act. Therefore, Mercedes is not entitled to summary judgment on that ground.

### VII

■■■ Count VII asserts a claim against both defendants for negligent repair. It alleges that Burton breached its duty of care by improperly rebuilding the engine, and that it was Burton's negligence which caused the engine to overheat a second time. It seeks recovery of damages representing diminution in value of the car because of the negligent repair and consequential damages for loss of use and inconvenience.

Burton seeks summary judgment on the ground that Gershman's suffered no damages because the car was satisfactorily repaired following both overheatings at no expense to Gershman's and that Gershman's sold the car for more than applicable "Blue Book" value as of the time of sale.

In *Chambers v. Hassell A. Van Dyke and Van Dyke Diesel Service*, Del.Super., C.A.No. 78C–MR–4, Christie, J. (September 19, 1979) (Letter Op.), this Court held that the correct measure of damages in a claim for negligent repair was "the difference between the value of the vehicle had it been properly repaired and its value with the defective repair."

Gershman's did not attempt to sell the car or tender it back to Burton or Mercedes in 1984. Apparently, it continued to use the car, with the exception of time when it was in the garage for repair, until 1986, when it overheated for the second time. The car was not sold by the parties until 1987. The reason for this delay was a disagreement between the parties as to what remedy Gershman's was entitled to receive. Gershman's argued that it was entitled to repayment of the purchase price or a new car. Burton argued that it was limited by Mercedes' warranty to repair or replacement of the defect. In addition, Gershman's now argues that Burton had agreed to supply Gershman's with a new car but this agreement is denied by Burton.

Whether Gershman's is entitled to pursue a claim for negligent repair may depend on the jury's resolution of the issue discussed above in Section II of this Opinion as to whether Gershman's is limited by Mercedes' warranty to repair or replacement of defective parts, or whether Gershman's may be entitled to return of the purchase price or a new car. If Gershman's is entitled to return of the purchase price or a new car, it would not be entitled to recover for damages to the car for negligent repair. Accordingly, the determination of whether Gershman's is entitled to damages for negligent repair and the amount of these damages should await the resolution of these related issues at trial.

■■■ As for Gershman's claim for consequential damages due to loss of use and inconvenience, a factual issue exists as to whether the vehicle was properly repaired following the first engine overheating and as to how long the car was out of service for repairs relating to this suit. Therefore, Mercedes is not entitled to summary judgment on Count VII of the complaint dealing with consequential damages.

### VIII

■■■ Gershman's also asserts a claim against Mercedes for negligent repair based upon Mercedes' alleged failure to properly supervise the repairs to the vehicle. Mercedes seeks summary judgment on this issue on the ground that there is no evidence in the record indicating that it supervised the repairs to the vehicle.

The Mercedes' express warranty provides that "Mercedes–Benz of North America, Inc. (MBNA) warrants … that any authorized Mercedes–Benz Dealer of the owner's choice" would make any repairs or replacements necessary to correct defects

in material or workmanship within 48 months or 50,000 miles.

The language of this warranty makes clear that Mercedes has undertaken the responsibility for correcting defects in the vehicle. The fact that an authorized Mercedes–Benz dealer will make the necessary repairs or replacements does not relieve Mercedes from its ultimate responsibility to see that defects are corrected. Given that the responsibility for correcting defects is on Mercedes, damage caused by the negligent repair of the vehicle by a Mercedes–Benz dealer must also rest upon Mercedes regardless of whether it supervised the repairs of the vehicle. The Court notes, however, that there is sufficient evidence from which the Court can conclude that Mercedes did supervise the repairs of this vehicle. The record indicates that all repairs relevant to this suit were made by Burton at the direction of Mercedes, after the car was examined by Burton's mechanics and the substance of these examinations was relayed to Mercedes. Accordingly, Mercedes is not entitled to summary judgment on this issue.

### IX

 Burton has moved for summary judgment against Mercedes alleging that under 6 *Del.C.* § 4905 and the franchise agreement between Burton and Mercedes, it is entitled to indemnification from Mercedes for any damages resulting from this suit and for attorney's fees. 6 *Del.C.* § 4905[2] provides as follows:

> Notwithstanding the terms of any franchise agreement, it shall be a violation of this chapter for any new motor vehicle manufacturer to fail to indemnify and hold harmless its franchised dealers against any judgment or settlement agreed to in writing by the manufacturer for damages, including, but not limited to, court costs and reasonable attorneys' fees of the new motor vehicle dealer, arising out of complaints, claims or lawsuits including, but not limited to, strict

liability, negligence, misrepresentation, warranty (express or implied) or recission of the sale as is defined in § 2–608 of the Uniform Commercial Code, less any offset recovered by the dealer and only to the extent that the judgement [sic] or settlement relates to the alleged defective or negligent manufacture, assembly or design of new motor vehicles, parts or accessories or other functions by the manufacturer, beyond the control of the dealer.

Mercedes concedes that Burton is entitled to indemnification for any damages awarded against it as to Counts I throught VI of the complaint. However, Mercedes contends that it is not liable to indemnify Burton on Count VII of the complaint dealing with negligent repair because it has not been established that the second overheating was attributable to a defect in the vehicle. The evidence is that the car was inspected by Burton mechanics after the second overheating. H.F. Ellis, a Burton mechanic, testified that he contacted Mercedes about the overheating and was instructed by Mercedes to check the vehicle for a defective thermostat. Ellis tested the thermostat by boiling it in 212° Fahrenheit water and found that the thermostat failed to function properly. Ellis relayed this information to Mercedes and it authorized replacement of the engine as a covered warranty repair.

The only evidence in the record which would counter the evidence that the second overheating was caused by the defective thermostat is the testimony of Gary E. Williams, Mercedes' technical specialist, who stated that there is no way to tell whether the second overheating was caused by the faulty thermostat or not. However, Mr. Williams also stated that he was convinced that the cause of the damage to the car from the second overheating was a defect in the engine. Based upon this testimony, there is no evidence in the record attributing the damage to the car to something other than an engine defect. Summary judgment is appropriate where

---

2. Under the Motor Vehicle Franchising Practices Act, the term "manufacturer" includes a " 'Distributor' which means any person … who in whole or in part offers for sale, sells or distributes any new motor vehicle to new motor vehicle dealers." 6 *Del.C.* § 4902(1)(a).

the party opposing the motion fails to make a showing sufficient to establish a material fact essential to that party's case. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548 at 2552–53, 91 L.Ed.2d at 273. As such, Burton is entitled to indemnification for any damages awarded in this suit and summary judgment is appropriate.

With respect to Burton's claim for attorney's fees in defending this action under 6 *Del.C.* § 4905, Mercedes opposes this motion on the ground that the statute only requires indemnification for attorney's fees where there is a "judgment or settlement agreed to in writing by the manufacturer" and that in this case there has been no written settlement or judgment.

Since Burton's right to recover damages from Mercedes is dependent upon Gershman's obtaining a judgment against Burton or written settlement with Mercedes, decision on the issue of indemnification of Burton's attorney's fees cannot be made at this time.

### X

In a motion for summary judgment it is not this Court's function to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Based upon the above analysis, defendant Burton's motion for summary judgment as to Count I, alleging breach of express warranty is DE-NIED. Burton's motion as to Count II of the complaint dealing with breach of implied warranty of merchantability is DE-NIED. Burton's motion with respect to Count III dealing with Delaware's Lemon Law is GRANTED. Burton's motion as to Count IV of the complaint dealing with the Magnuson–Moss Federal Consumer Products Warranties Act is GRANTED. Burton's motion as to Count V dealing with alleged fraudulent post-sale representations and presale representations that the car was free from defect is GRANTED. Burton's motion as to Count V dealing with presale representations as to the availability of parts for the car is DENIED. Bur-

ton's motion as to Count VI dealing with the Deceptive Trade Practices Act and Count VII dealing with damages for negligent repair is DENIED. Burton's motion for summary judgment against Mercedes for indemnification for damages is GRANTED. Burton's motion against Mercedes for attorney's fees is DENIED.

Mercedes' motion for summary judgment as to Count I dealing with breach of express warranty and Count II dealing with breach of implied warranty is DENIED. Mercedes' motion as to Count III dealing with Delaware's Lemon Law is DENIED. Mercedes' motion as to Count IV dealing with the Magnuson–Moss Federal Consumer Products Warranties Act for breach of express warranty is DENIED. Mercedes' motion as to Count IV dealing with improper limitation of implied warranty under the Magnuson–Moss Federal Consumer Products Warranties Act is GRANTED. Mercedes' motion as to Count V dealing with consumer fraud and Count VI dealing with the Deceptive Trade Practices Act is DE-NIED. Mercedes' motion as to Count VII dealing with negligent repair is DENIED.