**MERCEDES–BENZ OF NORTH AMERICA INC., and I.G. Burton and Company, Inc., Defendants Below–Appellants and Cross–Appellees,**

v.

**NORMAN GERSHMAN'S THINGS TO WEAR, INC., Plaintiff Below–Appellee and Cross–Appellant.**

Supreme Court of Delaware.

Submitted: Jan. 29, 1991.
Decided: Aug. 2, 1991.
As Revised: Aug. 6, 1991.

Joseph M. Bernstein, Wilmington, for appellant Mercedes–Benz of North America Inc.

N. Maxson Terry, Jr. of Terry, Jackson, Terry & Wright, Dover, for appellant I.G. Burton and Co., Inc.

Christopher J. Curtin of Sawyer & Akin, P.A., Wilmington, for plaintiff Norman Gershman's Things to Wear, Inc.

Before HORSEY, MOORE and WALSH, JJ.

HORSEY, Justice:

This suit for breach of warranty arises out of a car dealer and distributor's refusal to refund to purchaser the car's original purchase price and purchaser's refusal to accept the dealer and distributor's second "engine replacement" twenty-two months and 22,000 miles later.

In February 1984, plaintiff, "Norman Gershman's Things to Wear, Inc.," through Norman Gershman ("Gershman"), purchased for $58,660 a new 1984 Mercedes–Benz 500 SEC from defendant, I.G. Burton & Co., Inc. ("Burton"), a franchised Mercedes–Benz Delaware dealer. Defendant, Mercedes–Benz of North America, Inc. ("MBNA"), was the importer and distributor of the vehicle. Four months later, after the car had been driven 6,253 miles, Gershman complained to Burton that the car's engine had overheated and was inoperable. The overheating was later attributed to a crack in the engine block. Defendants returned the car thirty days later, after replacing the engine's "short block." Gershman would later testify that he was told, "They are replacing it with a brand new engine," and he did not learn until June 1986 that Burton had in fact only replaced the engine block. The repairs were made under MBNA's warranty at a cost to MBNA of $7,227.28.

Between August and November 1984, Gershman returned the car to Burton four times for servicing for engine problems related to: overheating, temperature gauge malfunction, and engine stalling or "running rough." In May 1986, Gershman left the car with Burton for repair of front end damage from a minor collision. After repair and while the car was being returned by Burton's service personnel to Gershman, the engine again overheated, attributed to a defective thermostat, resulting in extensive damage to the motor. By then, Gershman had driven the car 22,134 miles. MBNA replaced the entire engine assembly at a cost of $12,070; but Gershman then refused to accept redelivery of the car and demanded a full refund of the car's purchase price or a new vehicle.[1] Burton declined, stating that MBNA's warranty obligation did not go beyond repairing the vehicle at its expense. In November 1986, Gershman commenced this litigation, asserting multiple claims for relief, including breach of express and implied warranties and violation of state and federal law. Defendants moved for summary judgment on all claims and Superior Court granted in part and denied in part defendants' motions. *Norman Gershman's Things to Wear, Inc. v. Mercedes–Benz of North America, Inc.*, Del.Super., 558 A.2d 1066 (1989) ("*Gershman I*").

In trial by jury in Superior Court, the court granted in part and denied in part defendants' motions for directed verdict on all claims. The court permitted four of plaintiff's claims to be submitted to the jury: (i) plaintiff's primary claim against both defendants for breach of their warranty to "repair or replace"; (ii) plaintiff's claim for relief under 6 *Del.C.* § 2–608 for recovery of the car's purchase price for the remedy of "revocation of acceptance"; (iii) plaintiff's claim against both defendants for violation of the Delaware Deceptive Trade Practices Act, 6 *Del.C.* § 2531, et seq.; and (iv) plaintiff's claim against MBNA for violation of the Delaware Lemon Law, 6 *Del.C.* § 5001, et seq.

The jury, by special interrogatories, found defendants not in violation of the Delaware Deceptive Trade Practices Act, but MBNA liable for violation of the Delaware Lemon Law. Both defendants were found to have breached their warranty to "repair or replace," the warranty to have "failed of its essential purpose," and plaintiff to have "effectively revoked his acceptance" of the car. On these findings, the court entered a verdict against both defendants for $58,660.

All parties filed motions for judgment notwithstanding the verdict ("judgment n.o.v.") as to all findings. The court granted MBNA's motion with respect to Gershman's claim under the Lemon Law, and otherwise denied defendants' motion. The court also denied plaintiff Gershman's motion for judgment n.o.v.—for failure of plaintiff to have earlier filed a motion for a directed verdict.

Defendants' appeal raises a single issue: whether the trial court erred as a matter of law in refusing to grant defendants' motion for a directed verdict and motion for judgment n.o.v. with respect to plaintiff's claim for relief based on "revocation of acceptance" under 6 *Del.C.* § 2–608. Plaintiff cross-appeals from Superior Court's ruling setting aside its verdict against MBNA for violation of the Lemon Law and for new trial on the deceptive trade practices counts. Plaintiff also cross-appeals the court's reduction of its attorney's fee award. We find no merit to either the appeal or the cross-appeal.

The question presented by defendants' appeal is whether, under the facts of this case, plaintiff's delay in exercising its remedy of revocation was so excessive as to be found untimely as a matter of law. While conceding that timeliness of revocation is ordinarily a question for the trier of fact, defendants contend that this case is the exception to the rule. Defendants refer to "uncontradicted" evidence that over a period of eighteen months, from November 1984 to May 1986, Gershman drove the car approximately 12,600 miles without report-

---

1. Defendants refer to the May 1986 "overheating incident" as a "fortuitous occurrence" affording plaintiff a "much belated opportunity to revoke his acceptance."

ing any engine overheating problem, and with the car having been serviced by Burton but once.[2] Since Gershman could not have been relying on any promise by defendants "to make further repairs" over that period, defendants assert that Gershman's revocation remedy for engine malfunction accrued at the latest by November 1984, when he had "actual knowledge" of the warranty's failure. Defendants assert that plaintiff's 18–month delay, until May 1986, after obtaining knowledge of "grounds" for revocation, rendered the remedy untimely as a matter of law because neither induced by any assurance by defendants nor exercised "within a reasonable time after the buyer discover[ed] or should have discovered the ground for it." 6 *Del.C.* § 2–608(2). Defendants contend that there is insufficient evidence as a matter of law to sustain a jury finding that plaintiff's delay was "reasonable" under section 2–608(2) as either caused or induced by any actions or promises of defendants to make further repairs of the vehicle.

■ The predicate for the availability to plaintiff of the remedy of "revocation of acceptance," for purposes of recovery of the car's purchase price, was the jury's finding that MBNA's exclusive "repair or replace warranty failed of its essential purpose." *See* 6 *Del.C.* § 2–719(2). A warranty on a motor vehicle fails of its essential purpose when it is not repaired in conformity with the warranty within a reasonable time or within a reasonable number of attempts. *Gershman I,* 558 A.2d at 1070, 1071; *Beal v. General Motors Corp.,* 354 F.Supp. 423, 425, 426 (D.Del.1973). On this issue, Superior Court in *Gershman I,* in denying defendants summary judgment, found a dispute of a material fact, 558 A.2d at 1071; and defendants do not appeal the jury's finding that the warranty failed of its essential purpose. Indeed, defendants concede that plaintiff had, as late as November 1984, "valid grounds" for revocation of acceptance, presumably for engine overheating due to a "porous block."

■ This Court's standard of review of the trial court's denial of defendants' motion for a directed verdict and motion for judgment n.o.v. is well settled. The evidence of record must be viewed in a light most favorable to plaintiff, the nonmoving party; and the trial judge must determine whether under any reasonable view of the evidence, the jury could justifiably find in favor of the plaintiff and against the defendants. *Moody v. Nationwide Mutual Ins. Co.,* Del.Supr., 549 A.2d 291, 292–293 (1988). In reviewing the decision of the trial court, this Court applies the same standard that controls the trial court. *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2536 at 595 (1971). "[T]he findings of the jury, if supported by evidence, shall be conclusive." Del. Const. Art. IV § 11(1)(a); *Storey v. Camper,* Del.Supr., 401 A.2d 458, 465 (1979). Thus, the factual findings of a jury will not be disturbed if there is "any competent evidence upon which the verdict could reasonably be based." *Turner v. Vineyard,* Del.Supr., 80 A.2d 177, 179 (1951).

■ Plaintiff denies that he had actual knowledge before November 1984 of grounds for revocation of acceptance. Plaintiff testified that after the 1984 repairs, he continued to experience problems with the car's engine involving hesitation, stalling and the motor's running "rough." Gershman stated that he telephoned Burton's service manager to report the problems and was told that he would have to "live with the car's behavior of [engine temperature] rising almost to the red zone." Assuming that the car's entire engine assembly had been replaced in June, plaintiff, in effect, accepted Burton's explanations and continued to drive the car. Plaintiff contends that his revocation remedy was thereby tolled by Burton's misrepresentations in June concerning the engine replacement work and by Burton's assurances after November 1984 that his con-

---

**2.** In December 1985, Gershman reported an oil smell in the passenger area. However, defendants assert that the problem was corrected by replacement of a valve cover gasket and was unrelated to the June 1984 engine overheating problem.

tinuing complaints about the car's operation were imagined rather than real.

The trial court, in rejecting defendants' motion for judgment n.o.v., ruled:

> There is evidence on the record to support the jury's conclusion that the timing of the revocation was reasonable in view of the assurances that were given to the plaintiff after the initial repair and after he continued to complain through the months thereafter about the performance of the vehicle. He was told that the vehicle's performance was normal. He apparently accepted these assurances until the vehicle failed a second time. Viewing the facts in a light most favorable to the plaintiff, there was evidence to support the jury's finding that this revocation two years after the purchase of the vehicle was reasonable.

We sustain these findings as supported by the record and rule that the issue of the timeliness of plaintiff's June 1986 exercise of its remedy of revocation was properly submitted to the jury.

■ Whether a notice of revocation of acceptance is given within a "reasonable time" under 6 *Del.C.* § 2–608(2) is, as a general rule, a question of fact for the jury. *See, e.g., Chernick v. Casares*, Ky. App., 759 S.W.2d 832, 834 (1988); *Vista Chevrolet, Inc. v. Lewis*, Tex.App., 704 S.W.2d 363, 368 (1985), *aff'd in part, rev'd in part on other grounds*, Tex.Supr., 709 S.W.2d 176 (1986); *Conte v. Dwan Lincoln–Mercury, Inc.*, Conn.Supr., 172 Conn. 112, 374 A.2d 144, 148 (1976). The revocation "must occur within a reasonable time after the buyer discovers or should have discovered the ground for it. . . ." 6 *Del.C.* § 2–608(2). Defendants acknowledge that the time for revocation of acceptance may be extended "where the delay is prompted either by the seller's attempts to cure the defect, or where the delay was in reliance on the seller's continued assurances that the defect would be successfully repaired." *See Conte*, 374 A.2d at 149. In such instances, revocations occurring two, three and four years "after purchase and discovery of the non-conformity ... [have been found reasonable] depending on the number of promises to repair made, the length of time the repairs take, and the buyer's diligence in reporting problems." Rosmarin and Sheldon, *Sales of Goods and Services* § 27.3.6 (National Consumer Law Center 2d ed. 1989). *See Bair v. A.E.G.I.S. Corp.*, Fla.App., 523 So.2d 1186 (1988); *O'Shea v. Hatch*, App., 97 N.M. 409, 640 P.2d 515 (1982); *Purnell v. Guaranty Bank*, Tex.App., 624 S.W.2d 357 (1981); *Dopieralla v. Arkansas La. Gas Co.*, Supr., 255 Ark. 150, 499 S.W.2d 610 (1973). However, "[t]here are simply situations in which a buyer has delayed so excessively that his actions become untimely as a matter of law." *Chernick*, 759 S.W.2d at 834. *See* cases collected in J. White & R. Summers, *Uniform Commercial Code* Vol. 1 § 8–4 at 420, et seq. (West 1988).

■ Defendants contend that because Burton made no effort after November 1984 to repair the car's engine "overheating problem," plaintiff's delay until May 1986 in exercising its remedy could not have been induced by defendants; and case law relied upon by plaintiff is inapposite. Defendants assert that the trial court's finding of plaintiff's delay to be reasonable is flawed in the absence of any evidence of record "to support an inference that [defendant Burton's] assurances somehow induced Gershman to delay his revocation of acceptance." Defendants argue that this case compels the result reached in *Freedman v. Chrysler Corp.*, Del.Super., 564 A.2d 691 (1989) (motion for judgment notwithstanding verdict granted dealer/manufacturer, the court finding the remedy of revocation of acceptance not available to buyer as a matter of law).

We cannot agree that the record lacks evidence of conduct by defendants sufficient to toll a revocation. As previously noted, defendants not only concede that their warranty had failed of its essential purpose as late as November 1984, the jury so found. Implicit within such finding was a further finding that the dealer either refused to repair the vehicle or failed to repair it within a reasonable time or number of attempts. *See Gershman I*, 558 A.2d at 1070, 1071. Given defendant Bur-

ton's asserted misrepresentation concerning the extent of the engine replacement and its later assurances not to be concerned over the car's continued engine irregularity, plaintiff's continued reliance on those representations, if believed, was sufficient for a rational trier of fact to find Gershman's delayed revocation until May 1986 to be timely and reasonable under 6 *Del.C.* § 2–608(2).

■ Defendants' reliance on *Freedman* is also misplaced. In *Freedman* the court held as a matter of law that "the plaintiff has failed to timely revoke acceptance of the car.... Plaintiff drove the car for four months following the last repair ... accruing almost 4,000 miles before the purported revocation." *Freedman*, 564 A.2d at 700. Defendants point out that in this case plaintiff's delay in revoking acceptance after Burton's last attempted repair of the vehicle was "4 times greater," in terms of the length of time and mileage accrued, than the delay in *Freedman*. Here, defendants assert, there is no evidence of assurances by Burton that any acknowledged non-conformity would be corrected. *See, e.g., Ed Fine Oldsmobile, Inc. v. Knisley*, Del.Super., 319 A.2d 33, 37 (1974). However, defendants have failed to take into account plaintiff Gershman's testimony summarized above. In our view, a dealer's misrepresentations of repairs and refusal to investigate continuing complaints could be found an adequate basis for tolling a revocation of acceptance.

*Freedman* is factually distinguishable from this case in several respects. In *Freedman*, the issue of revocation arose in a distinct factual and legal framework. The buyer revoked his acceptance only "after the [automobile] warranty had expired," 564 A.2d at 700, and based on inconsequential complaints about the car. Here, revocation occurred within the warranty period and a finding of the warranty's failure of its essential purpose. The *Freedman* court found the plaintiff-buyer to have completely failed to prove that the defects in his automobile substantially impaired its value. In *Freedman*, plaintiff "failed to present a *prima facie* case" for

revocation of acceptance. Here, defendants concede that plaintiff had "valid grounds" for revocation due to a persistent engine overheating problem. Finally, we do not read *Freedman* as establishing a "bright-line" test for determining whether a revocation is timely under section 2–608. *Freedman* does not stand for the proposition that a buyer may be denied recovery under section 2–608 simply by driving his vehicle for a defined period of time or mileage after the last repair effort.

Plaintiff's cross-appeal for reinstatement of its verdict of $58,660 against MBNA for violation of the Lemon Law, 6 *Del.C.* § 5002, et seq., is mooted by our affirmance of plaintiff's monetary verdict for the same amount against both defendants on its remedy of revocation of acceptance for breach of warranty of its essential purpose. Plaintiff is entitled to only one recovery of the car's purchase price, and the jury was so instructed.

■ We turn to plaintiff's appeal of the verdict for defendant Burton under the Deceptive Trade Practices Act, 6 *Del.C.* § 2532, et seq. Plaintiff contends that the trial court committed legal error in a pretrial ruling excluding evidence of "other wrongs," in the form of misrepresentations, alleged to have been committed by defendant Burton, evidence of Burton's refusal to reach a settlement with plaintiff, and evidence that Burton had reached a similar settlement with another dissatisfied customer.

Before trial plaintiff sought by motion *in limine* permission to introduce "other wrongs" evidence that sometime in 1987 a Burton employee had, while repairing the transmission of another vehicle of plaintiff, cracked the casing and then attempted to conceal it with sealant rather than disclose the damage to plaintiff. The evidence was purportedly offered to show fraudulent intent by Burton in the 1984 repair of the Mercedes and a "history" of fraudulent concealment of inadequate repairs by Burton to sustain plaintiff's claim of willfulness under the Deceptive Trade Practices Act, 6 *Del.C.* § 2531, et seq. In part relying on *Getz v. State*, Del.Supr., 538 A.2d

726 (1988), the trial court ruled that the evidence of subsequent conduct was not sufficiently similar to plaintiff's 1984 Mercedes complaint and would be "unfairly prejudicial" to Burton.

■ The trial court also declined to permit plaintiff to introduce evidence of the parties' aborted settlement efforts in 1986 involving Burton's purported refusal to provide Gershman with a replacement vehicle at no cost, and that, at a later date, reached a similar settlement with another dissatisfied customer. Plaintiff argued that the evidence was relevant to show a "bias" by Burton against plaintiff and that Burton had made misrepresentations in hope of forestalling Gershman from timely exercising his revocation of acceptance remedy. The court ruled that evidence relating to the parties' efforts to reach an amicable settlement following the second engine failure was irrelevant and inadmissible and otherwise likely to confuse the jury. The court also found plaintiff's claim of bias inarticulated and indefinite, but subject to reconsideration if substantiated. The bias claim was not substantiated and was presumably abandoned.

On appeal, plaintiff asserts a further argument, not made of record below and first raised in its reply brief: that *Getz*'s specific holding has no application to civil cases, to which the presumption of innocence does not apply. However, plaintiff adopts *Getz*'s finding that subsequent acts are admissible for a material purpose and that D.R.E. 404(b)'s illustrations are not exclusive and thus the Rule should be liberally construed as an "inclusionary" rule, as applied to civil actions. *See Getz,* 538 A.2d at 730–731. Plaintiff asserts that the trial court's erroneous exclusion of both the "other wrongs" evidence and the evidence suggestive of "bias" rises to reversible error under D.R.E. 103(a) because the ruling foreclosed a "likely" favorable verdict under 6 *Del.C.* § 2532, et seq., permitting the trebling of plaintiff's actual damages.

■ For this Court to find reversible error in an evidentiary ruling, we must find not only error in the ruling, but that a "substantial right of the party is affected." D.R.E. 103(a); *Firestone Tire and Rubber Co. v. Adams,* Del.Supr., 541 A.2d 567, 570 (1988) (erroneous ruling must be found to have caused "significant prejudice" resulting in the denial of a fair trial). We find no error of law or abuse of discretion and therefore affirm the court's *in limine* rulings.

■ D.R.E. 404(b)[3] has equal application to civil as well as criminal cases. 1 Saltzburg and Martin, *Federal Rules of Evidence Manual,* § 404B at 222, 226, et seq. (5th Ed.1990); *see Firestone,* 541 A.2d at 570–71. Plaintiff's objection to *Getz*'s interpretive guidelines being applied does not appear to have been raised below, and therefore will not be considered a basis for reversal on appeal. Supr.Ct.R. 8. While *Getz*'s guidelines were developed for criminal proceedings and specifically related to "other crimes," they have analogous application to the admissibility of "other wrongs or acts" in civil cases, including tort actions and claims of discrimination, fraud or misrepresentations. *See* Saltzburg and Martin, *supra.* Furthermore, *Getz*'s analysis of the relationship of D.R.E. 401's requirement of relevancy of other wrongs or acts evidence, in terms of materiality and probative value, and D.R.E. 403 to D.R.E. 404, has equal application in civil litigation.

■ We think it fairly clear from the record below that the trial court was relying on this portion of *Getz* in finding plaintiff's proffered evidence neither to meet the threshold requirements of materiality and probative value, or to meet the balancing test of D.R.E. 403. The court found that the value of plaintiff's proffered evidence would be "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." *See United*

---

**3.** Delaware Rule of Evidence 404(b) provides:
(b) **Other Crimes, Wrongs or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

*States Football League v. National Football League,* 842 F.2d 1335 (2nd Cir.1988); *Hogan v. American Tel. & Tel. Co.,* 812 F.2d 409 (8th Cir.1987); *Monger v. Cessna Aircraft Co.,* 812 F.2d 402 (8th Cir.1987); *Faison v. Nationwide Mtg. Corp.,* 839 F.2d 680 (D.C.Cir.1987), *cert. denied,* 488 U.S. 823, 109 S.Ct. 70, 102 L.Ed.2d 46 (1988). Determination of relevancy under D.R.E. 401 and unfair prejudice under D.R.E. 403 are matters within the sound discretion of the trial court, and will not be reversed in the absence of clear abuse of discretion. We find none.

■ We take up plaintiff's remaining claim that the trial court's reduction of plaintiff's attorney's fee award by 40% was erroneous as a matter of law. The issue arises in the following context. Following the jury verdict, plaintiff filed a motion seeking an award of attorney's fees under three statutes: (1) the Magnuson–Moss Consumer Product Warranties Act, 15 U.S.C. § 2310(d)(2); (2) the Lemon Law, 6 *Del.C.* § 5005; and (3) the Deceptive Trade Practices Act, 6 *Del.C.* § 2533. MBNA acknowledged that plaintiff was entitled to an award of attorney's fees under both the Delaware Lemon Law and 15 U.S.C. § 2310. The trial court then ruled:

> In view of my earlier ruling [granting judgment n.o.v. on the Lemon Law verdict], only recovery under 15 U.S.C. § 2130 has application. Mercedes' objection to plaintiff's application for fees under § 2310 is that plaintiff should not recover for time spent on those claims on which plaintiff was unsuccessful.

In determining the appropriate fee to be awarded under § 2310 the Court must focus on the significance of the overall relief obtained by plaintiff in relation to the hours reasonably expended by his attorney. *Hensley v. Eckerhart,* 461 U.S. 424, 76 L.Ed.2d 40, 103 S.Ct. 1933 (1983). Where the plaintiff obtains excellent relief the fee award should not be reduced at all just because the plaintiff did not prevail on all of his arguments since the result is what matters. *Id.* However, where the plaintiff obtains only partial relief, the hours reasonably expended on the litigation as a whole may be excessive. *Id.* In such a case, the Court may identify specific time that should be eliminated or may reduce the total time spent to account for plaintiff's limited success. *Id.; Skelton v. General Motors Corp.,* N.D.Ill., 661 F.Supp. 1368 (1987) aff'd in part and rev'sd in part on other grounds 860 F.2d 250 (1988).

The plaintiff sought damages under the Magnuson–Moss Act plus treble damages under the Deceptive Trade Practices Act. Since plaintiff did not prevail on the claim for treble damages, the degree of success justifies reduction in the fee sought. Given the amount of pre-trial litigation and trial time expended in defending and developing the Deceptive Trade Practices claim, I conclude that it is appropriate to reduce the reasonable amount of counsel's time by 40 percent. Defendants are instructed to advise the Court within ten (10) days as to whether they accept the reasonableness of the attorneys fees as set forth in the affidavit submitted by plaintiff's counsel. If not, and if the parties are unable to agree, a hearing will be scheduled.

Gershman now claims that this 40 per cent reduction was an abuse of discretion because the court below "failed to specifically identify any time that was attributable to plaintiff's unsuccessful claims." Gershman contends that the trial court "merely picked a figure without analysis and without discussion or examination of the specific time allocated to the case."

MBNA responds that the court was entitled to reduce plaintiff's fee award under the Magnuson–Moss Act under case law developed by the United States Supreme Court in awarding attorney's fees for violation of civil rights under 42 U.S.C. § 1988. *See Skelton v. General Motors Corp.,* 661 F.Supp. 1368, 1375 (N.D.Ill.1987); *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40, 54 (1983) ("the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988"). MBNA asserts that the trial court complied with *Hensley* by ade-

quately explaining its reasoning for adjusting the fee award downward:

> We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior knowledge of the litigation.... It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of ... the limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.

*Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941, 76 L.Ed.2d at 53. We find that the trial court, in reducing the award by 40%, focused "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 51–52. To comply with *Hensley*, the trial court need not take a "mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Id.* at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52. We find that the trial court appropriately "reduce[d] the award to account for the limited success," *id.* at 436–437, 103 S.Ct. at 1941, 76 L.Ed.2d at 52, and further that the trial court adequately explained the 40% reduction by relating the reduction to the results obtained, i.e., the failure of plaintiff to prevail on the Deceptive Trade Practices claim. Finding no abuse of discretion, we therefore affirm the trial court's ruling. The parties agree that an issue remains before Superior Court as to the award of attorney fees in light of the disposition of this appeal. We express no view as to any further fee the trial court might award for services on appeal.

\*     \*     \*     \*     \*     \*

Appeal Affirmed. Cross–Appeal Affirmed.