**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| JANE DOE, JOHN DOE, and JACK DOE, on behalf of themselves and all others similarly situated, | ) ) ) ) | C.A. No. N24C-09-002 FJJ |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| BAYHEALTH MEDICAL CENTER, INC., d/b/a BAYHEALTH | ) ) ) ) | |
| Defendants. | ) ) | |

## *Amended OPINION AND ORDER*

### *Upon Consideration of Defendant, Bayhealth Medical Center, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint* **DENIED IN PART AND GRANTED IN PART.**

Submitted: March 10, 2025
Decided: April 4, 2025

Dean R. Roland, Esquire, and R. Grant Dick, Esquire of Cooch and Taylor P.A., Wilmington, Delaware, Raina C. Borelli, Esquire, *pro hac vice* counsel of Strauss Borelli, PLLC, Chicago, Illinois, and Joshua R. Jacobson, Esquire, *pro hac vice* counsel of Jacobson Phillips, PLLC, Altamonte Springs, Attorneys *for Plaintiffs, Jane Doe, John Doe, and Jack Doe, on behalf of themselves and all others similarly situated*.

Patrick M. Brannigan, Esquire, of Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware and Paulyne Gardner, Esquire, *pro hac vice* counsel of Mullen Coughlin LLC, Devon, Pennsylvania, *Attorneys for Defendant Bayhealth Medical Center, Inc.*

**Jones, J.**

1

**INTRODUCTION**

Three anonymous Plaintiffs, Jane Doe, John Doe, and Jack Doe, ("Plaintiffs"), bring this case on behalf of themselves and a class of similarly situated persons against Bayhealth Medical Center ("Defendant") for an alleged unauthorized disclosure of their private health information.[1] A technology hidden within Defendant's website purportedly gathered Plaintiffs' private health information and disclosed it to third parties for purposes of targeted advertising.

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiffs' claims are based on Defendant's alleged unauthorized use of "code-based trackers," known as "trackers" or "tracking technologies," on Defendant's website to collect Plaintiffs' private health information and then disclose the gathered information to third parties.[2] Trackers relay website-users' information to third parties by tracking the users' interactions with the website, including page views, clicks, and submissions, and sends that data to the website server as well as third parties.[3] Third parties can then integrate that data with previously gathered information to create a targeted ad.[4]

---

[1] The three named plaintiffs have been identified by name to Defendant confidentially.
[2] Docket Item ("D.I.") 18 ¶ 6.
[3] *Id.* ¶ 10.
[4] *Id.*

Plaintiffs purport Defendant used Facebook's Meta Pixel (hereinafter "Meta Pixel" or "Pixel").[5]  The Meta Pixel not only tracks device information, URLs and domains visited but can also track "search terms, button clicks, and form submissions."[6]  The Pixel can also link the visitor's interactions with their Facebook profile using cookie identifiers.[7]  Plaintiffs allege this allows their private health information to be connected to their individual profiles.[8]  In addition to the Meta Pixel, Plaintiffs allege Defendant's website was also using Facebook's Conversions Application Programming Interface ("CAPI").  CAPI is a tracker similar to the Pixel, but it does not require use of ad blockers or consent requests that would inhibit website users to block the tracked information from getting to Facebook.[9]  Plaintiffs allege comparable trackers made by Google (Google Tag Manager, "GTM") and Microsoft (Microsoft Universal Events and Microsoft Clarity) are also embedded on Defendant's website.[10]

Plaintiffs are Defendant's patients and have received healthcare services from physicians in Defendant's network.[11]  Plaintiffs allege Defendant encouraged them to use Defendant's website and that Plaintiffs did in fact use the website for purposes such as searching for physicians and services, accessing the patient portal, paying

---

[5] *Id.* ¶ 11.
[6] *Id* ¶¶ 11, 49.
[7] *Id.* ¶¶ 11, 49, 60, 104.
[8] *Id.*
[9] *Id.* ¶ 14.
[10] *Id.* ¶ 19.
[11] *Id.* ¶¶ 80, 92, 104.

for medical services, scheduling an appointment, and navigating website tabs.[12] After using Defendant's webpage, each Plaintiff began receiving targeted ads for the respective health conditions they were seeking information for.[13] Plaintiffs allege these targeted ads are a direct result of trackers embedded in Defendant's website and gathering their private health information, including but not limited to pages viewed; buttons clicked; patient statuses; keyword and physician searches; patient portal activities pertaining to patients' services, medical records, and billing and financial information; as well as identifying information, including IP addresses and cookies, and disclosing it to third parties including Facebook, Google, and Microsoft to utilize for profit.[14]

Plaintiffs describe several examples of Defendant's collection and disclosure process. One such example involves using a website user's keyword search to create a targeted ad for that user related to the search.[15] The user searches the words "cancer" and "pain," which leads the user to navigate to a webpage on colorectal cancer. The words searched and webpage clicked are then disclosed to the embedded trackers on Defendants' website. In addition, Defendant discloses a website call event coming from the colorectal cancer webpage when the user calls Defendant from the webpage and "PageView" events every time the user clicks to another page.

---

[12] *Id.* ¶¶ 7-8, 38-39 81, 93, 105.
[13] *Id.* ¶¶ 82, 93, 107.
[14] *Id.* ¶¶ 17, 18, 96.
[15] *Id.* ¶¶ 105-10.

Another illustration involves a website user clicking the "Find A Doctor" button on Defendant's website.[16]  Defendant discloses the user's click with a "SubscribedButtonClick" event and sends a "PageView" event indicating the user navigated to the "Find A Doctor" page.  Moreover, the Defendant transmits any information the user divulged by filtering their search including physician names, specialties, and patient's zip code.

Plaintiffs maintain Defendant guaranteed protection of Plaintiffs' private health information through their Privacy Policies posted on Defendant's website.[17]  Within the Privacy Policies, Defendant states it "will not use or share your information other than as described here unless you tell us we can in writing."[18]  The Privacy Policies provide the following situations in which Defendant can disclose a patient's personal health information without their written authorization: "[T]o treat you; run our organization (we can use and share your health information to run our medical center, improve your care, and contact you when necessary); bill for your services; help with public health and safety issues; do research; comply with the law; respond to organ and tissue donation requests; work with a medical examiner or funeral director; address workers' compensation, law enforcement and other government requests; respond to law suits and legal actions."[19]  Further, the policies

---

[16] *Id.* ¶¶ 111-16.
[17] *Id.* ¶¶ 23, 87-94.
[18] *Id.* ¶ 89, Exhibit ("Ex.") C.
[19] *Id.* ¶ 90, Ex. C.

give Plaintiffs the right to "security, personal privacy, and confidentiality of [their] private information," and maintain Defendant's promise that they will keep confidential information secure, including for "marketing; sale of your information" unless it is required under law or Plaintiffs give Defendant permission.[20]

The initial Complaint was filed on September 10, 2024.[21] Defendant responded by filing a Motion to Dismiss on November 21, 2024.[22] Plaintiffs filed the First Amended Complaint on December 20, 2024,[23] making Defendant's Motion to Dismiss moot. Defendant filed the instant Motion to Dismiss Plaintiff's First Amended Complaint on January 24, 2025.[24] Full briefing has occurred and is complete.[25] For the reasons set forth, Defendant's Motion to Dismiss is **granted in part and denied in part**.

## STANDARDS OF REVIEW

### A. Standing

The standard applied to a Rule 12(b)(1) motion to dismiss varies depending on whether the claim presents a "facial attack" or a "factual attack."[26] "[A] facial attack 'contests the sufficiency of the pleadings,'[27] 'whereas a factual attack

---

[20] *Id.* ¶¶ 92-93, Ex. B.
[21] D.I. 1.
[22] D.I. 11.
[23] D.I. 18.
[24] D.I. 22.
[25] *See* D.I. 25 (Plaintiffs' Answer in Opposition) and 27 (Defendant's Reply).
[26] *Constitution Party of Penn. v. Aichele*, 757 F.3d 347, 357-58 (3d. Cir. 2014).
[27] *Id.* at 385 (quoting *In re Schering Plough Corp,.* 678 F.3d 235, 243 (3d. Cir. 2012)).

concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'"[28] When a party files a motion to dismiss challenging jurisdiction before the party has filed an answer, the party's motion to dismiss is, by definition, a facial attack.[29]

Defendant filed the instant Motion to Dismiss in response to Plaintiffs' First Amended Complaint. Defendant has not filed an Answer nor submitted their competing facts. Thus, this Motion is not a factual attack but rather a facial attack to jurisdiction.

In a facial attack to jurisdiction, the Court may examine "allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."[30] The Court applies a Rule 12(b)(6) standard in reviewing this type of jurisdictional claim.[31]

## B. Failure to State a Claim

Rule 12(b)(6) allows the Court to dismiss for failure to state a claim upon which relief can be granted.[32] Under this rule, the Court must decide whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[33] The Court accepts all well-pled allegations as true so long

---

[28] *Constitution Party of Penn.*, 757 F.3d at 358 (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d. Cir. 2008)).
[29] *Id.* at 385. *See Mortensen v. First Fed. Sav. And Loan Ass'n.*, 549 F.2d 884, 892 n.17 (3d. Cir. 1977) ("A factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted.")
[30] *Constitution Party of Penn.*, 757 F.3d at 358 (quoting *In re Schering Plough Corp*, 678 F.3d at 243).
[31] *Id.*
[32] Super. Ct. Civ. R. 12(b)(6).
[33] *Abernathy v. Brandywine Urology Consultants*, 2021 WL 211144 at *2 (Del. Super. Jan 21, 2021).

as they put the opposing party on notice of the claim.[34]  Factual inferences are drawn in favor of the non-moving party.[35]  "If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss."[36]  While the pleading standard is "minimal," claims cannot be substantiated by "conclusory allegations that lack specific supporting factual allegations."[37]  Therefore, dismissal is appropriate if the complaint fails "to make 'specific allegations supporting each element of a claim or if no reasonable interpretation of the alleged facts reveals a remediable injury."[38]

## ANALYSIS

A. <u>Plaintiffs Have Pled an Injury-In-Fact to Satisfy Standing.</u>

Defendant contends Plaintiffs' claims lack standing and should be dismissed because the alleged injuries are not concrete.[39]  Defendant cites to case law dismissing claims of alleged disclosures pertaining to a plaintiff's website browsing data because the claims lacked injury sufficient to establish standing.[40]  Plaintiffs distinguish the instant case by pointing to the alleged protected health information

---

[34] *Id; Travelers Cas. and Sur. Co. of Am.*, 2024 WL 1298762 at *6.

[35] *Abernathy*, 2021 WL 211144 at *2.

[36] *Id.*

[37] *Travelers Cas. and Sur. Co. of Am.*, 2024 WL 1298762 at *6 (quoting *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536-37 n.13 (Del. 2011)).

[38] *Travelers Cas. and Sur. Co. of Am.*, 2024 WL 1298762 at *6 (quoting *Axogen Corp. v. Integra LifeSciences Corp.*, 2021 WL 5903306, at *2 (Del. Super. Dec. 13, 2021) (citing *Surf's Up Legacy Partners, LLC*, 2021 WL 117036, at *6))).

[39] *See* D.I. 22 p. 9-10.

[40] *See Id.*

("PHI") Defendant disclosed and utilizing case law to support the proposition that disclosing personal health information is an injury-in-fact.[41]

"Standing is a threshold question that must be answered by a court affirmatively to ensure that the litigation before the tribunal is a 'case or controversy' that is appropriate for the exercise of the court's judicial powers."[42] To establish standing, the plaintiff has the burden of proving (1) an injury in fact; (2) a causal correlation between the injury and the conduct challenged; and (3) a likelihood that the injury will be redressed by a favorable decision.[43] "[The] requirements for establishing standing under Article III to bring an action in federal court are generally the same as the standards for determining standing to bring a case or controversy within the courts of Delaware."[44] "At the pleading stage, general allegations of injury are sufficient to withstand a motion to dismiss because it is 'presume[d] that general allegations embrace those specific facts that are necessary to support the claim.'"[45] The injury-in-fact must be "concrete, particularized, and actual or imminent – not conjectural or hypothetical."[46] Further, the injury must be "fairly traceable to the

---

[41] *See* D.I. 25 p. 8-11.
[42] *Dover Historical Soc'y* 838 A.2d 1103, 1110 (Del. 2003).
[43] *Id.* at 1110 (citing *Soc'y Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168 (3d Cir. 2000)).
[44] *Dover Historical Soc'y*, 838 A.2d at 1111.
[45] *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).
[46] *Abernathy,* 2021 WL 211144, at *2.

9

challenged action of the defendant."[47]  If a plaintiff asserts their injury has not yet occurred, the plaintiff must show the future injury is "certainly impending."[48]

To determine whether an injury is concrete, the Court asks, "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts – such as physical harm, monetary harm, or various intangible harms."[49]  One such recognized intangible harm is the "disclosure of private information."[50]

Plaintiffs rely on several cases with fact patterns akin to theirs.  The plaintiffs in each case, while logged into their Facebook accounts, utilized their healthcare providers' websites for purposes such as scheduling appointments and researching providers, services, and conditions.[51]  Just as in the instant case, the plaintiffs began receiving targeted ads based on their activities on the provider's website.[52]  The Courts concluded the respective disclosures of private health information were concrete injuries-in-fact.  The Court in *Smith v. Loyola University Medical Center* came to this holding by reasoning that the alleged disclosures had a "close relationship to disclosure of private information, a common-law theory," which is

---

[47] *Id.*
[48] *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 409, 416-18 (2013)).
[49] *Salas v. Acuity-CHS LLC*, 2023 WL 2710180, at *5 (D. Del. Mar. 30, 2023).
[50] *Id.* (citing *TransUnion LLC v. Ramirez,* 594 U.S. 413, 425 (2021)).
[51] *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941 (N.D. Ill. 2024); *Doe v. Genesis Health Sys.*, 2024 WL 3890164 (C.D. Ill. 2024); *Williams v. Dukehealth*, 2024 WL 898051 (M.D.N.C. 2024).
[52] *Loyola Univ. Med. Ctr.,* 2024 WL 3338941, at *2; *Genesis Health Sys.,* 2024 WL 3890164, at *1-2.

recognized in American courts.[53]  Plaintiffs' alleged PHI disclosures bear close ties to this common-law theory.

The instant case is distinguishable from *Massie v. General Motors LLC* and *Abernathy v. Brandywine Urology Consultants*.  These cases, cited to in Defendant's Opening Brief, are data breach cases, which is not the scenario dealt with in the instant case.  In *Massie*, the Court held plaintiffs failed to establish a concrete injury because they did not have a "privacy interest at stake."[54]  The plaintiffs did not show that the defendant had any information outside of their browsing activity, and certainly not plaintiffs' personal information.[55]  Whereas here, Plaintiffs have properly alleged their personal health information was collected and disclosed. *Abernathy* is discernible from the instant case because the plaintiffs did not allege a present harm, only hypothetical future harms which the court deemed too conjectural to be a concrete injury-in-fact.[56]

Plaintiffs have adequately pled a lost benefit of the bargain in terms of failed security measures. Plaintiffs allege they were promised, and expected as paying patients, Defendant would protect their sensitive health information.[57]  Plaintiffs base the bargain on Defendant's privacy policies which explicitly state their health

---

[53] *Loyola Univ. Med. Ctr.*, at *3 (quoting *Florence v. Order Express, Inc.*, 674 F.Supp. 3d 472, 479 (N.D. Ill. 2023)).
[54] 2022 WL 534468, at *3.
[55] *Id.*
[56] *Abernathy*, 2021 WL 211144, at *4.
[57] D.I. 18 ¶¶ 87-94.

information will not be used for sale or marketing purposes without prior authorization.[58]  In *Williams v. Dukehealth*, the plaintiff alleged analogous circumstances and the court determined the loss of benefit of the bargain was an adequately pled injury in fact.[59]  The Court supported its holding with the plaintiff's allegations that she valued her private health information, the health provider promised to maintain discretion in their privacy policy, the plaintiff paid her provider with the understanding that the payment included the provider's protection of her private health information, and, finally, the provider disclosed her private information without the plaintiff's knowledge or consent.[60]  Plaintiffs have pled the same circumstances in their Complaint.[61]

*Abernathy* is yet again distinguishable from the instant case.  The *Abernathy* Court denied the plaintiff's lost benefit of the bargain argument emphasizing that "a plaintiff's 'claim that some indeterminate part of their premiums went toward paying for security measures . . . is too flimsy to support standing.'"[62]  Further, the Court held the plaintiffs did not raise facts showing the parties had any type of agreement that funds would be used for data security purposes.[63]  The plaintiffs in *Abernathy* were not basing the bargain on a privacy policy.  As stated above, the *Abernathy*

---

[58] *See Id.* Exs. B and C.
[59] *Williams*, 2024 WL 898051, at *4.
[60] *Id.*
[61] *See* D.I. 18 ¶¶ 7-9, 80-115.
[62] *Id.* at *5 (quoting *In re SAIC*, 45 F.Supp.3d 14, 30 (D. D.C. 2014)).
[63] *Abernathy*, 2021 WL 211144 at *5.

pleadings fall well below what Plaintiffs in the instant case have pled in terms of their lost benefit of the bargain claim.

Finally, Plaintiffs have sufficiently pled a future harm. While allegations of a future harm must be "certainly impending," allegations that a tracker is gathering a plaintiff's sensitive health information is sufficient to allege a likelihood of future harm because the information already collected by the tracker is out of the plaintiff's control.[64]

Based on the above arguments, the Court finds that Plaintiffs' alleged injuries contain sufficient concrete and particularized factual support to establish standing. Considering all well-pled allegations as true and construing inferences in a light most favorable to the Plaintiffs, the Court finds a reasonable interpretation of the facts that allow Plaintiffs standing to recover in this case. Therefore, the Court **DENIES** Defendant's Motion to Dismiss for lack of standing.

B. The Browsing Activity Collected And/Or Disclosed By Defendant Is Protected Health Information Required Under HIPPA To Be Secured By Defendant.

"Protected health information" ("PHI") is safeguarded by the Health Insurance Portability and Accountability Act's ("HIPPA") Privacy Rule.[65] "Individually identifiable health information ("IIHI") is PHI,

---

[64] *Mekhail v. North American Health Care*, 726 F.Supp.3d 916, 933 (D. Minn. 2024).
[65] *See generally* 45 C.F.R. Pts. 160, 164 Subparts A and E.

including demographic information collected from an individual, and: (1) is created or received by a healthcare provider, health plan, employer or health care clearinghouse; and (2) *relates to* the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) *that identifies* the individual; or (ii) with respect to which there is a reasonable basis to believe the information can be used to identify the information.[66]

Put simply, PHI is IIHI so long as the PHI relates to the individual's healthcare and identifies or could reasonably be used to identify the individual.[67] The Delaware Code similarly defines PHI as:

[a]ny information, whether oral, written, electronic, visual, pictorial, physical or any other form, that relates to an individuals past, present, or future physical or mental health status, condition, treatment, service, products purchased, or provision of care and that reveals the identity of the individual whose healthcare is the subject of the information, or about which there is a reasonable basis to believe such information could be utilized (either alone or with other information that is or should reasonably be available to predictable recipients of such information) to reveal the identity of that individual.[68]

Protected health information "is not public information . . . and may not be disclosed without the informed consent of the individual (or the individual's lawful representative) who is the subject of the information . . ."[69]

---

[66] 45 U.S.C. § 1320d(6)) (emphasis added).
[67] *Id.*
[68] 16 *Del. C.* § 1210(4).
[69] *Id.* § 1212(a).

An "unauthenticated public webpage" ("UPW") is a webpage that does not require login credentials or user verification.[70] The United States District Court for the Western District of Washington created a spectrum demonstrating what constitutes PHI on different webpages.[71] On one end, "the transmission of information submitted to a *private patient portal* – such as a user clicking on the 'log in' button on that webpage – reveals patient status, which in and of itself is protected health information."[72] On the other end, in which the only information transmitted is browsing activity on a publicly available website, "the URLs, or the content of the pages located at those URLs [do not relate] 'to the past, present, or future physical or mental health or condition of an individual," meaning there is no protected PHI.[73] In the middle of the two ends, there is information from UPWs which "may be actionable as well if the information disclosed demonstrates that the plaintiff's interactions plausibly relate to the provision of healthcare, or if the information connects a particular user to a particular healthcare provider (i.e., patient status.)[74]

The alleged information disclosed in this case falls in the middle area and to the far end of information submitted via login to a private patient portal. Plaintiffs allege they utilized Defendant's public-facing webpage "to access a patient portal"

---

[70] *Id.* at 789.
[71] *Ninebar v. Overlake Hosp. Med. Ctr.*, 733 F.Supp.3d 1072, 1081-82 (W.D. Wash. 2024).
[72] *Id.*
[73] *Id.*
[74] *Id.*

and for "patient portal activities."[75]  According to the PHI-spectrum outlined above, that information in and of itself is a protected patient status.  Further, the other information Plaintiffs allege was collected and disclosed can be coupled with Plaintiffs' identifying information, such as IP address and Facebook IDs, to establish a patient status.

Defendant argues the facts and holding in *American Hospital Association v. Becerra* are instructive for the immediate case.[76]  Defendant uses *Becerra* to argue the browsing information disclosed is not PHI.[77]  The United States District Court for the Northern District of Texas in *Becerra* held a Health and Human Services ("HHS") Bulletin "improperly create[d] substantive legal entities" by allowing PHI to be considered as IIHI under HIPPA when an internet user's IP address visits a UPW with health condition or healthcare provider information on it.[78]

The Court denies applying *Becerra* to the instant case for multiple reasons. First, as held in *Nick Gaige v. Exer Holding Co., LLC*, the HHS guidance vacated by *Becerra* has no impact on a plaintiff's disclosure allegations when the plaintiff's claims are based on statutory and common law violations.[79]  Plaintiffs do not reference the vacated HHS guideline in their pleadings but rather premise their

---

[75] D.I. 18 ¶ 7, 17, 38, 81, 93, 105.
[76] D.I. 22 p. 11-12.
[77] *Id.*
[78] *Becerra*, 738 F.Supp.3d at 789-90.
[79] 2925 WL 559719 (C.D. Cal. 2025).

claims on Defendant's infringement of the Delaware Code § 1212(a), HIPPA's Privacy Rule, the Health Breach Notification Rule under the Federal Trade Commission ("FTC") Act, and Delaware common law causes of action.[80] Second, in *Becerra*, the plaintiffs are two hospitals and a regional healthcare system suing as covered entities under HIPPA, and the identifying information at issue is IP addresses.[81] In the instant case, patients are bringing claims against the medical center and the alleged information disclosed includes pages viewed, buttons clicked, patient statuses, keyword searches, physician searches, patient portal activities, as well as "identifying information, such as IP addresses and identifying cookies."[82] The Court in *Becerra* held that to establish IIHI the website visitor's subjective intent had to be known and had to relate to their *own* healthcare because an IP address alone was not sufficient to serve as an identifier for IIHI purposes.[83] Whereas in the instant case, Plaintiffs' allege their Facebook IDs were linked to their health information to establish their patient statuses. Further, Plaintiffs allege HHS guidance states that IP addresses standing alone are considered individually identifying information.[84]

---

[80] *See* D.I. 18 ¶¶ 124-35, 176-40.

[81] *Becerra*, 738 F.Supp.3d at 789.

[82] D.I. 18 ¶ 17.

[83] *Becerra*, 738 F.Supp.3d at 801-05; *See J.C. v. Catholic Health System, Inc.*, 2024 WL 5136236, at *14 (W.D.N.Y. 2024) (declining to apply *Becerra* because: (1) J.C.'s facts involved alleged disclosures of IIHI connected to individual's Facebook IDs, and (2) the *J.C.* court disagreed with the *Becerra* court's analysis "concerning user's subjective intent.")

[84] *See* D.I. 18 ¶ 137-44 (citing 45 C.F.R. §§ 164.514(2), (2)(ii), (b)(2)(i)(O)).

Defendant cites to *Smith v. Facebook, Inc.*, to establish that public information is browsing activity and not PHI.[85] However, multiple cases factually aligning with the instant case distinguish *Smith* in their analyses. The cases note that *Smith* dealt with publicly available, general health information; whereas each differentiating case concerned the plaintiffs' individual health information and had an associating connection linking that information to their identity.[86]

These cases support Plaintiffs' allegations that their disclosed health information in conjunction with the identification of their Facebook IDs establishes their patient statuses, which is PHI.[87]

C. The Economic Loss Doctrine Does Not Bar Plaintiffs' Negligence Claim.

"The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged itself (i.e., has not caused personal injury or damage to *other* property) and, the only losses suffered are economic in

---

[85] D.I. 22.

[86] *Genesis Health Sys.*, 2024 WL 3890164, at *6 (found *Smith* unpersuasive because "in addition to metadata, [the defendant] disclosed class members' PII and PHI" that may be linked to class members' Facebook IDs); *Kurowski v. Rush Sys. For Health ("Kurowski IV")*, 2024 WL 3455020, at *5 (N.D. Ill. 2024) (distinguishing the information collected and disclosed in *Smith* as "general, publicly accessible health information," as opposed to the plaintiffs' "individualized patient data"); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *6 (W.D.N.Y. 2024) (data gathered concerns the individual's healthcare, coupled with Facebook's ability to "link this data to a specific user profile," forms a "reasonable basis to believe that the information can be used to identify that individual."); *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 791-93 (N.D. Cal. 2022) (protected patient status disclosed via the Pixel gathering the defendant's patient portal URL and plaintiff's act of clicking the Log In button to the patient portal).

[87] *See Kurowski IV*, 2024 WL 3455020 (holding factual allegations that website trackers disclosed the name, location, and specialty of plaintiff's physician amounted to IIHI); *Cousin v. Sharp Healthcare*, 702 F.Supp. 967, 973 (S.D. Cal. 2023) (holding plaintiffs' information obtained through their activity on provider webpages constituted IIHI because the information "plausibly relate[d] to the provision of health care" and, when linked with the patient's IP address, identified the individual.).

nature."[88]  An economic loss is "any monetary loss, costs of repair or replacement, loss of employment, loss of business or employment opportunities, loss of good will, and diminution in value."[89]

The doctrine "is a court-adopted measure that prohibits certain claims in tort where overlapping claims based in contract adequately address the injury alleged."[90] The rule is not an affirmative defense but rather a bar to tort actions that are better suited under contractual claims.[91]  "The driving principle for the rule is the notion that contract law provides a better and more specific remedy than tort law."[92]  "The economic loss doctrine supports the ability of persons to allocate the risks of business transactions."[93]  The doctrine is "especially suited to situations where privity of contract exists."[94]

Relying on *Salas v. Acuity-CHS* and *Bray v. Gamestop Corporation*, Defendant asserts Plaintiffs' alleged lost value, lost benefit of the bargain, and mitigation costs harms are barred from recovery under a negligence or negligence per se claim due to the economic loss doctrine.[95]  Plaintiffs note the holdings relevant to economic

---

[88] *Marcucilli v. Boardwalk Builders*, 1999 WL 1568612, at *4 (Del. Super. Dec. 22, 1999).
[89] *McKenna v. Terminex Intern Co.*, 2006 WL 1229674, at *4 (Del. Super. Mar. 13, 2006).
[90] *Brasby v. Morris*, 2007 WL 949485, at *6 (Del. Super. Mar. 29, 2007).
[91] *Id.*
[92] *Id. See* Am. L. Prod. Liab.3d § 60:41 ("The pragmatic reason behind the rule is straightforward: 'The physical consequences of negligence usually have been limited, but the indirect economic repercussions of negligence may be far wider, indeed virtually open-ended. Thus, the fear of crushing useful activity by liability is the moving force behind the rule.'")
[93] *Brasby*, 2007 WL 949485, at *6.
[94] *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1200 (Del. 1992).
[95] D.I. 22 p. 16-18.

loss doctrine are inapplicable to the instant case and argue Plaintiffs' diminution in value of their private health information and loss of privacy harms impact person and property and are not purely economic.[96]

Defendant maintains that the Delaware District Court cases *Salas* and *Bray* govern Delaware law concerning the economic loss doctrine in the data breach context.[97] Defendant purports these cases both stand for the proposition that in data breach cases the economic loss doctrine bars any claim based on negligence.[98] Defendants are correct that the Court in each of these two cases dismissed the negligence claims. However, neither decision directly addressed the question of whether an adequately drafted complaint including allegations of injury to person or property based on diminution of the value of a person's private information or loss of privacy states a valid cause of action. In both cases, plaintiffs pled only financial or economic losses, triggering the economic loss doctrine's bar.[99]

There is no Delaware case controlling the question of whether an allegation that a plaintiff has suffered a diminution in value of their personal privacy or a violation of their privacy is sufficient to support a claim sounding in negligence.[100] The

---

[96] D.I. 25 p.16-18.
[97] D.I. 22 p. 17-18.
[98] *Id.*
[99] *See Salas*, 2023 WL 2710180, at *7; *Bray v. Gamestop Corp.*, 2018 WL 11226516, at *3-4 (D. Del. Mar. 16, 2018).
[100] However, there is Delaware case law recognizing cognizable claims in the violation of the right of privacy (*see Barbieri v. News-Journal Co.*, 189 A.2d 773, 773-74 (Del. 1963)) and the invasion of privacy torts (*see Fanean v. Rite Aid Corp. of Del.*, 984 A.2d 812, 821 (Del. Super. Ct. 2009)).

growing trend across the country is that courts have held that such allegations support a claim based on a negligence theory.[101] This judge is of the view, depending on the evidence developed, that Delaware should join this growing trend and recognize a claim based on tort given the realities of the 21st century and the harm that can be done to an individual by having their privacy breached.

It is clear to the Court that, unlike the situation in both *Bray* and *Salas*, Plaintiffs have alleged a non-economic injury based in negligence. At this motion to dismiss stage, this Court will allow this claim to proceed and give Plaintiffs a full opportunity through the discovery process to prove up this non-economic claim. With a more complete record, the Court can have a better understanding on the damages alleged to determine whether Delaware should follow the current trend.

D. Plaintiffs Have Adequately Pled a Negligence Claim.

A claim for negligence requires the plaintiff to allege "(i) a duty that is owed to plaintiff; (ii) defendant breached that duty; and (iii) as a proximate cause of the breach, plaintiff suffered damages."[102] Delaware Superior Court Civil Rule 9(b) requires circumstances surrounding a negligence claim to be pled with

---

[101] *M. R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *7-8 (D. Or. 2024)(holding plaintiffs' loss of privacy and diminished value of private health information supported a negligence claim and were not "purely economic" harms); *Harris v. Mercy Health Network*, 2024 WL 5055556, at *18 (S. D Iowa 2024) (allowing negligence and negligence per se claims "to proceed on the narrow issue of whether [the plaintiff] can recover damages in the form of diminution in value of his personal information, loss of privacy, and loss of time."); *Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *4 (N. D. Cal. 2024) (holding "invasion of [the plaintiff's] reasonable expectation of privacy in their medical information" amounts to intrusion upon seclusion and is a non-economic injury.)
[102] *Travelers Casualty and Sur. Co. of Am. v. Blackbaud, Inc.*, 2024 WL 1298762, at *12.

particularity.[103]  A plaintiff satisfies this requirement by pleading "(1) what duty, if any, was breached; (2) who breached it; (3) what act or failure to act breached the duty; and (4) the party upon whom the act was performed."[104]

Defendant alleges Plaintiffs plead conclusory and speculative negligence claims in their Complaint.[105]  Defendant again relies on *Becerra*'s holding to argue the information disclosed in this case was not protected; therefore, Defendant asserts it did not have a duty to protect this information, nor did Plaintiffs suffer a "legally cognizable harm."[106]  Plaintiffs reject this argument and direct the Court to the allegations within their Complaint.[107]

For the reasons discussed prior, the Court will not apply *Becerra* to the instant case and finds that Plaintiffs adequately pled the information disclosed by Defendant is Plaintiffs' protected and individually identifiable health information.  Therefore, the Court disagrees with Defendant's argument that Plaintiffs failed to plead legally cognizable harms.

In addition, Plaintiffs have sufficiently pled Defendant's duty to Plaintiffs "to exercise reasonable care in handling and using Plaintiffs' and Class Members' Private Information in its care and custody, including implementing industry-

---

[103] Del. Super. Ct. Civ. R. 9(b).
[104] *Travelers Casualty and Sur. Co. of Am.*, 2024 WL 1298762, at *12.
[105] D.I. 22 p. 19.
[106] *Id.*
[107] D.I. 25 p. 19-21.

standard privacy procedures sufficient to reasonably protect the information from the Disclosure and unauthorized transmittal and use of Private Information that occurred."[108] The Complaint states that Plaintiffs are "members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's disclosure of their Private Information to benefit third parties and Defendant."[109] Moreover, Plaintiffs extensively describe the alleged breach throughout their entire Complaint.[110] Therefore, this Court finds Plaintiffs have adequately pled the elements of negligence with particularity.

Based on the above reasons, Defendant's Motion to Dismiss Plaintiffs' Negligence claim is **DENIED.**

E. Plaintiffs Fail to State a Claim for Negligence Per Se.

Negligence per se is applicable when a plaintiff establishes (1) "the statute in question was enacted for the safety of others," (2) there is a "causal connection between the statutory violation and the injury," (3) "the statute set[s] forth a standard of conduct which was designed to avoid the harm plaintiff suffered," and (4) "defendant violated the statute by failing to comply with that standard of conduct."[111]

---

[108] D.I. 18 ¶ 176.
[109] D.I. 18 ¶ 179.
[110] See D.I. 18.
[111] NFO Co. v. Garrett Snuff Mills, Inc., 2002 WL 130536, at *2 (Del. Super. Jan. 30, 2002).

23

Defendant argues Plaintiffs' negligence per se claim based on violations of HIPPA as well as Section 5 of the Federal Trade Commission ("FTC") Act is inappropriate because Delaware case law is clear that HIPPA[112] as well as the FTC Act[113] do not provide private rights of action for individuals to bring suits under them.[114]

Plaintiffs respond that rather than bringing a private cause of action under these statutes, they are depending on Defendant's violation of the statutes to establish the duty owed by Defendant.[115]

The Delaware Supreme Court in *Toll Brothers, Inc. v. Considine* held while an OSHA violation could not be the basis for a negligence per se claim, "the substance of the OSHA regulations may, nonetheless, be relevant as standards bearing upon conduct."[116] The Superior Court in *Fanean v. Rite Aid Corp. of Delaware, Inc.* relied on this logic to hold the same applied to HIPPA. The *Fanean* Court held the plaintiffs could not use HIPPA as a basis for a negligence per se claim but could "enforce [HIPPA] as a guidepost for determining the standard of care applicable to a negligence action."[117]

---

[112] *See Brown v. United States*, 2023 WL 2428838, at *7 (D. Del. Mar. 9, 2023); *Fatir v. Phelps*, 2019 WL 216720, at *12 (D. Del. May 17, 2019) ("It has been commonly recognized that HIPPA does not create a private cause of action. HIPPA creates its own enforcement mechanism under 42 U.S.C. §§ 300gg-22, which limits enforcement actions to the states or the Secretary of Health and Human Services."); *Fanean*, 984 A.2d at 815.

[113] *See Recovery Fund II USA LLC v. Rabobank, National Assoc.*, 2020 WL 509166, at *8 (D. Del. Jan. 31, 2020) ("There is no private right of action under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.")

[114] D.I. 22 p. 20-22.

[115] D.I. 25 p. 21-22.

[116] 706 A.2d 493, 498 (Del. 1998).

[117] 984 A.2d at 823-24.

Based on this reasoning, this Court finds Plaintiffs' negligence per se claims dependent on HIPPA and the FTC dismissed because these statutes do not provide a private cause of action. However, Plaintiffs may use the duty standards under these statutes as "guideposts" for establishing duty under their negligence claim.

Based on the above reasons, Defendant's Motion to Dismiss Plaintiffs' Negligence Per Se claim is **GRANTED.**

F. <u>Plaintiffs Adequately Pled Breach of Implied Contract.</u>

To establish a breach of contract, a plaintiff must prove "(1) the existence of an express or implied contract; (2) a party breached the obligation imposed by the contract; and (3) any damages that the plaintiff incurred as a result of the breach."[118] An implied contract is "proven through conduct rather than words."[119] Just as in an express contract, an implied contract requires offer, acceptance, and consideration.[120] "There must be a 'meeting of the minds,' and 'the parties' mutual assent to the contract terms must be objectively manifest or shown."[121] However, "naked assertions devoid of further factual enhancement" do not support an actionable claim of breach of implied contract.[122]

---

[118] *Salas*, 2023 WL 2710180, at *8 (quoting *Saunders v. E.I. duPont de Nemours & Co.*, 2014 WL 7051078, at *4 (D. Del. Dec. 12, 2014)).
[119] *Salas*, 2023 WL 2710180, at *8 (quoting *Chase Manhattan Bank v. Iridium Africa Corp.*, 239 F.Supp.2d 402, 407 (D. Del. 2002)).
[120] *Salas*, 2023 WL 2710180, at *9.
[121] *Id.* (quoting *Chase Manhattan Bank*, 239 F.Supp.2d at 408).
[122] *Longnecker-Wells v. Benecard Servs. Inc.*, 658 Fed. App'x. 659, 662 (3d. Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Defendant rejects Plaintiffs' alleged reliance on the Privacy Policies as a source of Defendant's contractual duties. Defendant perceives Plaintiffs' "subjective belief" that paying for Defendant's medical services, coupled with the Privacy Policies, does not amount to an implied contractual obligation that Defendant will protect Plaintiffs' PHI.[123]

Plaintiffs allege that, "as a condition of receiving medical care from Defendant," Plaintiffs compensated Defendant for received treatment with the understanding that "a portion of [compensation] was for adequate data security."[124] Plaintiffs utilize Defendant's Privacy Policies as the source of contractual terms for this implied agreement.[125] Plaintiffs claim this exchange established an implied contract between the parties under which Defendant breached its duty to protect Plaintiffs' PHI.[126]

At this point in litigation, Plaintiffs have adequately pled the existence of an implied contract. As encouraged by Defendant, an integral portion of being Defendant's patient is using the website for reasons such as checking the patient portal, researching health conditions, and booking appointments. In exchange for payment of medical services, Plaintiffs expected Defendant to align with the

---

[123] D.I. 22 p. 22-24.
[124] D.I. 18 ¶ 198.
[125] *Id.* ("Plaintiffs and Class Members entered into contracts with Defendant by which Defendant agreed to safeguard and protect such information, in its Privacy Policies . . .")
[126] D.I. 25 p. 32-35.

promises made in their Privacy Policies and protect Plaintiffs' information from sale, unless otherwise authorized. Nonetheless, according to Plaintiffs, Defendant disclosed Plaintiffs' sensitive health information to third parties for profit. Plaintiffs urge they would not have used Defendant's website, nor paid for medical services, if they knew the Privacy Policy would not be followed and their information would be disclosed to third parties. These allegations are sufficient to establish the presence and breach of an implied contract between the parties.

This conclusion aligns with the reasoning in several cases finding an implied contract where a defendant was dealing with sensitive health information.[127] The District of Massachusetts dealt with comparable facts in *Doe v. Tenet Healthcare Corporation*. In that case, the Court allowed the implied breach of contract claim to proceed past the motion to dismiss stage where the plaintiffs adequately pled the defendant breached contractual obligations under an implied contract, based on the defendant's privacy policy, by disclosing the plaintiffs' information to third parties.[128] The Delaware District Courts emphasize the prudence of allowing such claims to proceed cautiously at the early stages of litigation.[129]

---

[127] *Salas*, 2023 WL 2710180, at *10 (finding an implied contract requiring the healthcare provider to adequately safeguard the patient's private health information based on the parties' conduct and relationship); *Doe v. Regents of Univ. of Cal.*, 731 672 F.Supp.3d 813, 821 (N.D. Cal. 2023)(plaintiffs plausibly pled an implied contract between parties when they alleged they would not have paid for the defendant's services and entrusted the defendant with their confidential data in the absence of data-safeguarding promises made in defendant's privacy statements.)
[128] 731 F.Supp.3d 142, 150 (D. Mass. 2024).
[129] *Salas*, 2023 WL 2710180 at *10; *Bray*, 2018 WL 11226516, at *6.

At the motion to dismiss stage, a plaintiff needs only to plead "a causally related injury that warrants a remedy."[130] Defendant's argument that Plaintiffs did not allege actual damages is incorrect. As Plaintiffs stated, they have "alleged actual damages, including unauthorized access of their Private Information by third parties, improper disclosure of their Private Information, inappropriate advertisements, and increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress."[131]

Based on the above reasons, Defendant's Motion to Dismiss Plaintiffs' Breach of Implied Covenant claim is **DENIED.**

### G. Plaintiffs Adequately Pled Unjust Enrichment.

A plaintiff states a claim for unjust enrichment when they establish "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[132] "The existence of either an express or implied contract precludes recovery on a quasi-contractual claim like unjust enrichment."[133] However, "where a bona fide dispute exists as to the existence of [a] contract, the plaintiff may proceed on both breach of contract and quasi contract theories."[134]

---

[130] *Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 328 (Del. Ch. 2022).

[131] D.I. 25 p. 26 (citing D.I. 18 ¶¶ 45, 90, 118).

[132] *Salas*, 2023 WL 2710180, at *11 (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).

[133] *Kane*, 2024 WL 1178340, at *15 (quoting *Nakamura v. Fujii*, 253 A.2d 387, 390 (N.Y. App. Div. 1998)).

[134] *Id.*

Plaintiffs allege, in the alternative to the breach of contract claim, the "valuable sensitive medical information" collected by Defendant "conferred a monetary benefit upon" Defendant.[135] Plaintiffs assert Defendant received a benefit from the collection and disclosure of Plaintiffs' sensitive information "for their own gain, including for advertisement purposes, sale, or trade for valuable services from third parties" as well as from Plaintiffs' monetary compensation for Defendant's services.[136] Plaintiffs then claim they were impoverished by the value Defendant received by disclosing Plaintiffs' information for "marketing and sales purposes."[137]

Defendant's main contention is that Defendant could not have been unjustly enriched by Plaintiffs because Defendant never received a benefit from Plaintiffs.[138] The third element of unjust enrichment, "a relation between the enrichment and the impoverishment," does not allow a plaintiff to recover unjust enrichment from a defendant when a third party is receiving the benefit rather than the defendant.[139] However, despite the Defendant's argument, Plaintiffs allege Defendant increased profits and enhanced the marketing of its services by disclosing Plaintiffs'

---

[135] D.I. 18 ¶ 210.

[136] *Id.*

[137] *Id.* ¶ 214.

[138] D.I. 25 p.26-27.

[139] *See Anguilla RE, LLC v. Lubert-Adler Real Estate Fund IV, L.P.*, 2012 WL 5351229, at *6 (Del. Super. Oct. 16, 1012) ("[T]here must be 'a showing that the defendant was enriched unjustly by the plaintiff who acted *for* the defendant's benefit.") (quoting *Metcap Secs. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *6 (Del. Ch. May 16, 2006)).

information to third parties.[140]  This allegation is sufficient at this time to satisfy an

benefit conferred to Defendant under unjust enrichment.

Based on the above reasons, Defendant's Motion to Dismiss Plaintiffs' Unjust

Enrichment claim is **DENIED.**

H. <u>Plaintiffs Adequately Pled a Violation of the Delaware Consumer Fraud Act.</u>

The Delaware General Assembly's purpose for enacting the Delaware Consumer

Protection Act (hereinafter, "DCFA" or "the Act") was "to protect consumers and

legitimate business enterprises from unfair or deceptive merchandising practices in

the conduct of any trade or commerce in part or wholly within [Delaware]."[141]  The

Act makes the following unlawful:

> [t]he act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealing, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise . . .[142]

A plaintiff seeking damages under this Act must allege "(1) a defendant engaged in

conduct which violated the statute; (2) the plaintiff was a victim of the unlawful

conduct; and (3) a causal relationship exists between the defendant's unlawful

conduct and the plaintiff's ascertainable loss."[143]  The Act is to be "liberally

---

[140] D.I. 18 ¶ 16, 39, 140, 145, 214.
[141] *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharm. LP*, 136 A.3d 688, 692 (Del. 2016).
[142] 6 *Del. C.* § 2513(a).
[143] *Id.*

construed" because it's purpose is to "protect consumers . . . from unfair or deceptive merchandising practices."[144]

Parties disagree over whether a DCFA claim must be pled with particularity under Superior Court Civil Rule 9(b). The Delaware District Court makes very clear that "the Act must still be pleaded with particularity under Rule 9(b)."[145] However, the District Court further clarifies:

> [t]he Act "makes it easier to establish a claim for consumer fraud than common law fraud" in three ways: (1) a negligent misrepresentation is sufficient to violate the statute; (2) an unlawful practice is committed *regardless of actual reliance by the plaintiff*; and (3) the Act does not require proof of intent to induce action or inaction by the plaintiff. A negligent misrepresentation is sufficient under the Act, meaning the "defendant need not have intended to misrepresent or to make a deceptive or untrue statement. Instead, the only intent requirement of the Act is that in omitting or concealing a material fact, the *defendant must have intended that others rely on the omission or concealment*."[146]

Plaintiffs allege Defendant violated the DCFA by encouraging use of their webpages yet intentionally failing to inform Plaintiffs that their information was being disclosed to third parties.[147] Defendant raises several opposing arguments in response.

First, Defendant contends its Privacy Policies cannot be construed as "advertisements" because the policies are requirements under HIPPA and do not

---

[144] 6 *Del. C.* § 2512.

[145] *Williams v. Progressive Direct Ins. Co.*, 631 F.Supp.3d 202, 207 (D. Del. 2022)(citing *Homsey v. Vigilant Ins. Co.*, 496 F.Supp.2d 433, 438-39 (D. Del. 2007)).

[146] *Williams*, 631 F.Supp.3d at 207 (quoting *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983))(emphasis added).

[147] D.I. 18 ¶ 222.

31

prompt a commercial transaction.[148] The Act defines "advertisement" as "the attempt by publication, dissemination, solicitation or circulation to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in, any merchandise."[149] This broad definition encompasses the published Privacy Policies. Plaintiffs depended on the Policies' guaranteed protection in their continued use of Defendant's medical services.[150] These are sufficient allegations to properly plead the alleged misrepresentations were "in connection with an advertisement."[151]

Second, Defendant argues the geographical requirement of the DCFA is not satisfied because the Complaint does not allege Defendant made misrepresentations in Delaware.[152] Plaintiffs' Complaint alleges Plaintiffs are all domiciled in Delaware and are all patients of Defendant whose place of business is in Delaware as well.[153] The parties' jurisdictions coupled with Plaintiffs use of the DCFA indicates to the Court that Defendant's alleged violations of the Act occurred in Delaware.

---

[148] D.I. 22 p.28 n.8.
[149] 6 *Del. C.* § 2511(1).
[150] D.I. 18 ¶ 88, 100, 112.
[151] The Delaware Courts have not faced a DCFA claim in a scenario with factual allegations akin to the instant case. However, several district and state courts have allowed claims under their respective consumer fraud acts to pass the motion to dismiss stage. *See Strong v. Lifestance Health Grp. Inc.*, 2025 WL 317552, at *8-9 (D. Ariz. 2025); *Lamarr v. Goshen Health Sys., Inc. d/b/a Goshen Health,* No. 20D02-2404-PL-000090 (Ind. Super. Oct. 3, 2024); *Doe v. Va. Mason Med. Ctr.*, No. 19-2-26671-4 (Wash. Super. Feb. 12, 2020); *see also In re Meta Pixel Tax Filing Cases*, 724 F.Supp. 987, 1012-23 (N.D. Cal. 2024) (dismissing Consumer Fraud Act claim solely on the ground the plaintiffs' failed to plead they "actually reviewed" privacy policy communications; whereas, in the instant case, Plaintiffs' continuously plead they relied on Defendant's Privacy Policies in using their services.)
[152] D.I. 22 p.29.
[153] D.I. 18 ¶¶ 29-33, 217.

Construing these well-pled allegations as true, the Court finds the DCFA's geographical requirement is satisfied.

Third, Defendant purports the alleged deception was not made in relation to the "sale, lease, or *advertisement* of . . . merchandise," as is required by the Act.[154] Defendant argues the Privacy Policies are "post-sale representations" not amounting to recognized consumer fraud under the Act.[155] "Claims made under the DCFA must relate to communications made before or during the contested transaction."[156] Delaware case law makes clear that "post-sale representations" which are *not* connected to the sale or advertisement cannot be consumer fraud under the Act.[157]

*Norman Gershman's Things to Wear, Inc. v. Mercedes-Benz of North America, Inc.* is instructive on what amounts to a "post-sale representation." In *Norman*, the Delaware Supreme Court held purported misrepresentations made *after* the sale of a car were "not connected to the sale or advertisement" for purposes of consumer fraud under the DCFA.[158] The plaintiff claimed it "relied upon [the post-sale misrepresentations] in not exercising its rights under the law." In contrast, the alleged misrepresentations allowing the DFCA claim to pass the summary judgement stage were pre-sale statements concerning the defendant's warranty

---

[154] 6 *Del. C.* § 2513(a)(emphasis added). The Act defines "merchandise" as "any objects, ware, goods, commodities, intangibles, real estate or services." 6 *Del. C.* § 2511(6).
[155] D.I. 22 p.29-30
[156] *Fulkerson*, 2002 WL 32067510, at *3 (Del. Super. Sept. 24, 2002).
[157] *Norman Gershman's Things to Wear, Inc. v. Merces-Benz of North Am.*, 558 A.2d 1066, 1074 (Del. Super. Feb. 10, 1989).
[158] *Id.*

promises.[159] The post-sale representations in *Norman* differ from the privacy representations alleged in the instant case.

The Privacy Policies bear on Plaintiffs' use of Defendant's website alleged to be an integral aspect of receiving Defendant's medical care. The Privacy Policies were not made available until 2021, after Plaintiffs became patients; nevertheless, the Court is uncertain if the policies are "post-sale representations," considering Plaintiffs continued medical care from Defendants is an ongoing transaction.

Finally, Defendant asserts Plaintiffs' DCFA claim must be dismissed because the conduct, and alleged damages, concerning Plaintiffs' fraud and the breach of implied contract claims are the same.[160] A complaint can allege both fraud and breach of contract only if the fraud claim is founded "on conduct that is separate and distinct from the conduct constituting breach."[161] In addition, "[a] plaintiff alleging both fraudulent misrepresentation and breach of contract must prove that the damages pled under each cause of action are distinct."[162] Looking to the Complaint, Plaintiffs' DCFA and breach of implied contract claims plead distinct conduct and damages.[163] At this early stage of litigation, the Court will not dismiss Plaintiffs' DCFA claim

---

[159] *Id.* at 1075.
[160] D.I. 22 p.31.
[161] *Hiller & Arban, LLC v. Reserves Mgmt., LLC*, 2016 WL 3678544, at *4 (Del. Super. July 1, 2016) (quoting *ITW Glob. Invs. v. Am. Indus. Partners Capital Fund IV, L.P.*, at *6 (Del. Super. June 24, 2015)).
[162] *Hiller & Arban*, 2016 WL 3678544, at *4 (quoting *4C, Inc. v. Pouls,* 2014 WL 1047032, at *7 (D. Del. Mar. 5, 2014)).
[163] *Compare* D.I. 18 ¶¶ 197-207 *with* D.I. 18 ¶¶ 217-30.

based on this argument and will give plaintiffs the opportunity to substantiate the claim during the discovery process.

Based on the above reasons, Defendant's Motion to Dismiss Plaintiffs' Delaware Consumer Fraud Act claim is **DENIED.**

I. Breach of Confidentiality

A breach of confidentiality claim requires a plaintiff to show "(1) defendant owed a duty of confidentiality; (2) a physician-patient relationship exists; and (3) that duty was breached."[164]  Defendant argues Plaintiffs failed to plead a breach of confidentiality claim because, according to *Martin v. Baheler*,[165] a third party is required to actually view the disclosed information.  Further, Defendant contends it does not owe a duty of confidentiality to Plaintiffs.[166]  Plaintiffs find Defendant misconstrued *Martin*'s holding and argue that their Complaint adequately pleads all requirements of breach of confidentiality.[167]

In *Fanean v. Rite Aid Corp. of Delaware, Inc.*, the Delaware Superior Court inferred Rite Aid's customers expected confidentiality due to the nature of the sensitive health information disclosed to the pharmacy.[168]  The Court deemed Rite Aid a pharmacy, rather than a corporation, with the duty of confidentiality a

---

[164] *Redden by Redden v. Meadow Wood Hosp. for Children and Adolescents*, 1997 WL 127981, at *2 (Feb. 21, 1997).
[165] 1993 WL 258843 (Del. Super. May 20, 1993)
[166] D.I. 22 p. 31-32.
[167] D.I. 25 p. 32-35.
[168] 984 A.2d at 824.

pharmacy owes to its patient-customers because Rite Aid was "holding itself out to the public as a pharmacy."[169] Similarly, Plaintiffs have an expectation of Defendant to keep their sensitive health information protected because Defendant is their medical provider and also promised to keep their information confidential. The Court finds the duty of confidentiality satisfied.

Delaware case law interpreting breach of confidentiality claims against medical providers supports the existence of a physician-patient relationship between the parties to the instant case. In *Fanean*, and other cases, the Delaware courts have found relationships other than the traditional individual physician and patient to fall under this category.[170] The nature of the relationship between a patient and their medical provider as an entity establishes the physician-patient relationship because the medical provider handles a patient's protected health information. A patient has an expectation that their provider will control that information with discretion.

The Court agrees with Plaintiffs argument that *Martin v. Baehler* does not require proof that a third party viewed the disclosed information. The holding of *Martin* finds that a physician breached their duty of confidentiality when an employee disclosed confidential patient information "if the jury finds [the physician] did not implement reasonable office procedures to guard against such a disclosure."[171]

---

[169] *Id.*
[170] *See* 984 A.2d at 824; *Redden by Redden*, 1997 WL 127981, at *2; *Martin v. Baehler*, 1993 WL 258843, at *4.
[171] *Id.* at *4.

However, the Court can infer from the Complaint that by producing targeted advertisements from Plaintiffs' disclosed information, the third parties likely viewed it.

Finally, Plaintiffs have sufficiently alleged Defendant's duty of confidentiality was breached by disclosing their identifiable, protected health information to third parties.[172]

Based on the above reasons, Defendant's Motion to Dismiss Plaintiff's Breach of Confidentiality claim is **DENIED.**

## CONCLUSION

Based on the above reasons, Defendants' Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

**IT IS SO ORDERED.**

<i>/s/ Francis J. Jones, Jr.</i>

Francis J. Jones, Jr., Judge

*cc:*   *File&ServeXpress*
      Counsel of Record

---

[172] D.I. 18 ¶ 235-37.